CONSOLIDATED GAS SUPPLY
CORPORATION, Petitioner,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent,

Public Service Commission of the State
of New York, Intervenor.

No. 77–1893.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 23, 1979.

Decided July 10, 1979.

Rehearing Denied Aug. 22, 1979.

John E. Holtzinger, Jr., Washington, D. C., with whom Karol Lyn Newman, Washington, D. C., was on the brief, for petitioner.

J. Paul Douglas, Atty., Federal Energy Regulatory Commission, Washington, D. C., with whom Howard E. Shapiro, Sol., Federal Energy Regulatory Commission, was on the brief, for respondent.

Richard A. Solomon, Washington, D. C., with whom Peter H. Schiff, Gen. Counsel, Public Service Commission of the State of New York, Albany, N. Y., was on the brief, for intervenor.

Also Philip R. Telleen and McNeill Watkins, II, Washington, D. C., Attys., Federal Energy Regulatory Commission, entered appearances, for respondent.

Also Sheila S. Hollis, Washington, D. C., entered an appearance for intervenor.

Before MacKINNON, SWYGERT,[1] and ROBB, Circuit Judges.

Opinion for the Court filed by SWYGERT, Circuit Judge.

SWYGERT, Circuit Judge.

This petition for review raises not only a substantial evidence question concerning a public utility's rates of return on common equity, but also a number of administrative procedural problems.

Petitioner Consolidated Gas Supply Corporation (Consolidated) seeks review of a July 5, 1977 order of the Federal Energy Regulatory Commission (the Commission) prescribing rates of return on common equity in connection with Consolidated's rate increase requests originally filed on May 15, 1973 (Commission Docket No. RP 73–107)

---

1. Of the Seventh Circuit, sitting by designation pursuant to 28 U.S.C. § 291(a) (1970).

and May 16, 1974 (No. RP 74–90).[2] Consolidated also appeals from that part of the Commission's order of August 29, 1977 denying rehearing.

The critical issue in this case is whether the rates of return prescribed in the Commission's July 5, 1977 order are supported by substantial evidence. Before reaching that question, we are required to dispose of some preliminary matters regarding the propriety of this appeal and the alleged misuse of a settlement proposal by the Commission.

### I

On May 15, 1973 Consolidated filed with the Commission proposed tariff sheets which reflected increased rates and charges. The proposal included a 9.5% overall rate of return and a 12.10% return on common equity. The Commission accepted the filing but suspended the effective date of the proposed rates until December 1, 1973. These rates were then in effect from that date until December 1, 1974.

On May 16, 1974 Consolidated filed proposed tariff sheets for additional increases. This proposal contained a 9.75% overall rate of return and a 12.31% return on common equity. The Commission accepted the filing, suspending the effective date until December 1, 1974. These rates were in effect from that date until November 1, 1975. Other rate filings have since become effective, superceding those at issue here. We are thus concerned with Consolidated's rates of return for the twenty-three month period ending November 1, 1975.

The proceedings in the instant action effectively began with a Commission order consolidating the 1973 and 1974 filings for purposes of hearing and decision. While this matter was pending before an Administrative Law Judge, an assistant general counsel of the Commission sent Consolidated a letter on May 3, 1976. The letter stated that the Commission had determined it would be in the public interest to resolve the matter by settlement. Pursuant to section 1.18 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 1.18, Consolidated was therefore asked to submit a settlement proposal. This Consolidated did on June 4, 1976.

An agreement was reached on all cost of service issues except rate of return. That settlement agreement, along with Consolidated's proposal on the rate of return issue, was admitted into evidence by the Administrative Law Judge on August 6, 1976 and certified by him to the Commission on August 9. Consolidated's rate settlement proposal suggested an overall return of 9.46% for the period covered by the 1973 filing, which would yield a 12% rate of return on common equity. For the period covered by the 1974 filing, Consolidated proposed a 9.59% overall return, which included a common equity rate of return of 12.25%.

The parties[3] filed with the Commission initial comments on the settlement agreement and on Consolidated's settlement proposal, and both Consolidated and the Commission's Staff filed reply comments as well. The Public Service Commission of the State of New York (New York) supported Consolidated's proposal for the 1973 filing but recommended that those rates be maintained for the 1974 filing as well. The Commission's Staff recommended a rate of return on common equity of 11.63% and an overall return of 9.27% for both filings.

---

2. The Commission's July 5, 1977 order also prescribed a rate of return for a rate increase proposal filed by Consolidated on April 16, 1975 (No. RP 75–91). In the August 29, 1977 order, however, the Commission granted Consolidated's request for a rehearing in No. RP 75–91, remanding that case for further proceedings on the rate of return issue. It also stayed refunds ordered in that case pending a final decision on the rate of return question. These matters are thus not before us on this petition for review.

3. The "parties" involved in the proceeding included Consolidated, the Public Service Company of the State of New York, the New York State Electric and Gas Corporation, the Rochester Gas and Electric Corporation, and the Staff of the Commission. Of these, only Consolidated, the Public Service Commission of the State of New York, and the Commission's Staff are involved in the rate of return issue which forms the basis for this appeal.

On July 5, 1977 the Commission issued an order approving the uncontested portion of the settlement agreement and "establish[ing] a fair rate of return" on the contested rate issue. The rates of return set by the Commission were 11.75% on common equity and 9.33% overall, which were above those recommended by its Staff but below those proposed by Consolidated and New York.

Consolidated applied for rehearing and reconsideration of the Commission's order on August 1. It pointed out what it thought were inconsistencies in the July 5 order and argued that the prescribed rates of return were not based on substantial evidence. It also asked the Commission to "complete the decisional process" if the Commission chose to deny the rehearing application.

The Commission responded to this request in two ways. First, on August 8, it issued an "Errata Notice" which deleted an incorrect reference in the July 5 order that had created an apparent inconsistency.[4] Then, on August 29, the Commission issued an order denying that part of Consolidated's application for rehearing and reconsideration relevant to this petition for review. Consolidated petitioned this court to review both the July 5 and August 29 orders.

## II

The first issue with which we must concern ourselves involves a question of finality. The Commission takes the position that its July 5 order was not a final order, but merely a counteroffer or counterproposal to that tendered by Consolidated. Support for this contention is found in the title of the order[5] and in some of its language.[6] The Commission argues that because the July 5 order is a mere conditional acceptance of

Consolidated's proposal, it is something that Consolidated can "walk away from" if it is unwilling to agree to the conditions of acceptance, namely, the rates prescribed by the Commission. In fact, it is claimed that the Commission has not yet prescribed rates and that they could not be considered "prescribed" until Consolidated filed a motion to withdraw its settlement proposal and the Commission denied the motion.

■ We need not explore the vagaries of the Commission's position on this issue for we are not convinced by this *post factum* argument. It is manifest from both the order's language and the Commission's analysis of the issues that the July 5 order was intended to be and in fact was final. At the outset of its July 5 order, the Commission stated that it "will approve the settlement agreement and establish a fair rate of return in this order. . . ." Order of July 5, 1977 at 1. At the conclusion, the Commission found that Consolidated "should be required to file tariff sheets reflecting just and reasonable rates as necessary to conform to this order" and then ordered Consolidated to file revised tariff sheets within sixty days "in conformance with the terms of the settlement agreement approved herein and reflecting the conditions described in the body of this order." *Id.* at 23. The language used is that of command and not that of counterproposal.

Beyond this, the Commission's order was not merely a response to a settlement proposal. As we hold *infra,* it was a decision on the merits based on a record which Consolidated acknowledged to be complete. Inasmuch as the order is "of a definitive character dealing with the merits of a proceeding before the Commission and resulting from a hearing upon evidence and supported by findings appropriate to the case,"

---

4. Although the July 5 order prescribed a rate of return on common equity of 11.75% for the 1973 and 1974 filings, at a later point in that order the Commission had parenthetically categorized a 12% rate as having been allowed for those filings. The errata notice deleted this parenthetical reference.

5. "Order Approving Settlement Agreement Subject to Conditions And Prescribing Reasonable Rate of Return."

6. *E. g.:* "The Stipulation and Agreement certified to this Commission in this proceeding is hereby accepted subject to the conditions as hereinabove described." Order of July 5, 1977 at 23.

*Federal Power Commission v. Metropolitan Edison Co.,* 304 U.S. 375, 384, 58 S.Ct. 963, 967, 82 L.Ed. 1408 (1938), we find the requisite degree of finality to be present for purposes of judicial review.

### III

■ Apart from the question of finality, the Commission raises another objection to our review. As we discuss *infra,* one of Consolidated's objections to the Commission's orders centers on the allegedly improper use by the Commission of Consolidated's settlement proposal in violation of 18 C.F.R. § 1.18(e).[7] The Commission argues that Consolidated is barred from invoking our jurisdiction to review this procedural objection because this objection was not properly raised in the application for rehearing.

Section 19(a) of the Natural Gas Act, 15 U.S.C. § 717r(a), provides that an "application for rehearing shall set forth specifically the ground or grounds upon which such application is based." Section 19(b), 15 U.S.C. § 717r(b), provides that "[n]o objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do."

Consolidated argues that its objection to use of the settlement proposal was properly raised. The May 3, 1976 letter from the Commission's assistant general counsel indicated that a settlement proposal was being requested "pursuant to . . . Section 1.18." Consolidated's proposal and its motion for adoption thereof both referred to section 1.18. The application for a rehearing of the Commission's July 5, 1977 order characterized Consolidated's offer as an "unaccepted settlement proposal" and stated that Consolidated had not waived its right to a hearing and decision, specifically referring the Commission to 18 C.F.R. § 1.18(e). Moreover, Consolidated argues, the Commission's use of the proposal as evidence against Consolidated did not become apparent until the order denying rehearing; therefore, there were reasonable grounds for failing specifically to urge the objection, if in fact the prior references are found inadequate. And there was no requirement of seeking a rehearing of the rehearing application. *Public Service Commission v. FPC,* 177 U.S.App.D.C. 272, 543 F.2d 757 (1974).

Although a more specific reference was possible as is evidenced by Consolidated's treatment of the issue before this court, we believe that the Commission had sufficient notice that Consolidated objected to its procedural handling of the matter. The Commission concedes that the application for rehearing "made . . . references to the alleged procedural deficiencies" but styles these as "ambiguous." Brief for Respondent at 34. The specific citation to section 1.18(e), however, together with Consolidated's requests for a hearing and decision on the merits, sufficiently indicate that Consolidated objected to the July 5 order in part because it viewed the order as based on its settlement proposal rather than on the record in the case. We therefore do not regard as improper our treatment of this procedural objection on its merits.

### IV

■ Considering, then, the merits of Consolidated's procedural objection, there is no evidence in the July 5 order from which we could conclude that the Commission relied on the settlement proposal as evidence against Consolidated in reaching its rate of return decisions. In oral argument before

---

7. 18 C.F.R. § 1.18(e):

*Offers of settlement.* Nothing contained in this section shall be construed as precluding any party to a proceeding from submitting at any time offers of settlement or proposals of adjustment to all parties and to the Commission . . . or from requesting confer-

ences for such purpose. Unaccepted proposals of settlement or of adjustment or as to procedure to be followed and proposed stipulations not agreed to shall be privileged and shall not be admissible in evidence against any counsel or person claiming such privilege.

this court, Consolidated conceded that any references to the settlement proposal in the July 5 order were in "basically descriptive language." Nothing in section 1.18(e) prevents descriptive reference to a settlement proposal as opposed to use of that proposal as evidence against the proposer.

If the Commission's decision were not otherwise supportable by substantial evidence on the record, and especially if this were not evident from a reading of the order itself, references to the proposal might fairly lead to the assumption that it was indeed used as evidence, there being nothing else to support the decision. As is discussed *infra,* however, that is not the case here. Consolidated's argument that the decision is explainable only if viewed as a compromise necessarily achieved through use of the competing proposals thus fails because we find its underlying premise to be false.

■ Of more serious concern is Consolidated's contention that the Commission's denial of its rehearing application must be vacated because of improper use of the settlement proposal. Consolidated points specifically to page six of the August 29 order (footnotes omitted):

> Consolidated next argues that the Commission failed to consider record evidence concerning the company's studies on dividend yield plus the rate of earnings growth. The Commission in its order noted all three studies, which the company's witness testified were not conclusive. The Commission correctly stated that Consolidated did not place much credence in its statistics, since its proposed rates of return were unrelated to the results of its studies:

| | Consolidated's Proposed Return on Equity (Settlement Agreement) | Return on Equity Recommended In DCF Statistical Analysis |
| --- | --- | --- |
| Docket No. RP73–107 | 12.00% | 14.6% (Tr. 73.) |
| Docket No. RP74–90 | 12.25% | 14.9% (Tr. 95.) |
| Docket No. RP75–91 | 13.58% | 14.9% (Exhibit No. 30, Testimony of N. K. Davis at 12–15.) |

The Commission did consider Consolidated's studies in making its decision. However, both the Commission and Consolidated determined that returns on equity substantially lower than those recommended in the studies were justifiable.

It cannot be gainsaid that the Commission in this passage has used the settlement proposals as evidence against Consolidated's position. Neither can it be denied that this use violates the strictures of section 1.18(e). As such it must be condemned. But inasmuch as we hold, *infra,* that the July 5 order was itself based on permissible, substantial evidence, the question remains what effect this use of impermissible evidence in the denial of a rehearing application should have on our review of the Commission's rate determination here at issue.

■ Generally, when courts have invalidated adjudicatory actions by federal agencies which violated their own regulations promulgated to give a party a procedural safeguard, the basis for such reversals has not been due process but rather a rule of administrative law. *Bates v. Sponberg,* 547 F.2d 325, 330 (6th Cir. 1976). The Administrative Procedure Act, however, provides that a reviewing court shall take due account of the rule of prejudicial error. 5 U.S.C. § 706. We are to take note of this rule, and apply it, even if our review of the agency's action is expressly provided for by

another enactment. 5 U.S.C. § 701(a).[8] *Braniff Airways, Inc. v. CAB,* 126 U.S.App. D.C. 399, 411, 379 F.2d 453, 465 (1967). *See Kerner v. Celebrezze,* 340 F.2d 736, 740 (2d Cir.), *cert. denied,* 382 U.S. 861, 86 S.Ct. 121, 15 L.Ed.2d 99 (1965).

This rule means that "[a] court will not reject an agency finding that is supported by substantial evidence merely because the agency also incidentally mentions incompetent or irrelevant material." *Braniff Airways, supra,* 379 F.2d at 466. The appropriate standard is to remand for correction of an error only when there is substantial doubt that the administrative agency would have reached the result it did absent reference to the material. *Id.; Denton v. Secretary of the Air Force,* 483 F.2d 21, 28 (9th Cir. 1973), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974); *Kovac v. INS,* 407 F.2d 102, 108 (9th Cir. 1969). *Cf. Arnold v. Morton,* 529 F.2d 1101, 1105 (9th Cir. 1976) (if grounds for decision are incorrect, must remand in absence of subjective certainty by court with respect to outcome of agency decision on remand).

We are convinced that Consolidated was not prejudiced by the Commission's unfortunate use of the settlement proposal as evidence in the order denying rehearing. The use occurred in the context of the Commission's discussion of a subsidiary issue: the weight to be accorded certain studies in the record before the Commission. In the July 5 order, the Commission referred to the fact that Consolidated did not regard the studies as conclusive, and that therefore it did not place much weight on them. Order of July 5, 1977 at 13. The record discloses, and Consolidated concedes in its brief,[9] that Consolidated's own witness testified that the studies were not con-

clusive, although they had some value. Moreover, in the August 29 order denying rehearing, the Commission merely referred to the proposed rates as additional proof that not much weight should be placed on the studies.[10] Inasmuch as an independent basis existed in the record for this subsidiary conclusion of the Commission, and inasmuch as the improper supporting evidence was only cited as additional proof in a denial of rehearing, we are convinced that the same result would have obtained absent the improper reference. Accordingly, we regard the error as nonprejudicial.

V

Finally, then, we reach Consolidated's charge that the Commission's orders must be reversed because they are not supported by substantial evidence. We note first that it cannot be seriously contested that it was improper for the Commission to reject the contested settlement proposal and yet reach a decision on the issue. That question was decided in *Mobil Oil Co. v. FPC,* 417 U.S. 283, 313–14, 94 S.Ct. 2328, 41 L.Ed.2d 72 (1974):

> We think that the Court of Appeals correctly analyzed the situation and stated the correct legal principles:
>
> "No one seriously doubts the power —indeed, the duty—of FPC to consider the terms of a proposed settlement which fails to receive unanimous support as a decision on the merits. We agree with the D. C. Circuit that even 'assuming that under the Commission's rules [a party's] rejection of the settlement rendered the proposal ineffective *as a settlement,* it could not, and we believe should not, have precluded the Commission from considering the pro-

---

**8.** 5 U.S.C. § 701(a) provides:

This chapter applies, according to the provisions thereof, except to the extent that—
(1) statutes preclude judicial review; or
(2) agency action is committed to agency discretion by law.

**9.** Reply Brief for Petitioner at 17.

**10.** The proposed rates filed by Consolidated in 1973 and 1974 were very close to those in its

settlement offer. In No. RP 73–107, the filed rate of return on common equity was 12.10%, and the settlement offer was 12.00%. Similarly, in No. RP 74–90, the filed rate was 12.31% on common equity, and the settlement offer was 12.25%. Thus, like the settlement offers, Consolidated's filed rates differed greatly from the rates indicated by the studies, which difference tends to undercut the reliability of those studies.

posal *on its merits.' Michigan Consolidated Gas Co. v. FPC,* 1960, 108 U.S. App.D.C. 409, 283 F.2d 204, 224 . . ." 483 F.2d at 893.

As we stated in *Pennsylvania Gas & Water Co. v. FPC,* 150 U.S.App.D.C. 151, 463 F.2d 1242 (1972), a settlement proposal in a proceeding like the instant one is in the nature of a motion for summary judgment, and the agency may reach such a judgment on such terms as it deems fair from the evidence before it. *Id.* 150 U.S.App.D.C. at 155, 463 F.2d at 1246. The standard for judicial review of an administrative order arising out of the submission of a contested settlement proposal is whether the order amounts to a resolution of the issue on the merits, that is, whether the Commission has made an independent rate determination supported by substantial evidence on the record as a whole. *Mobil Oil, supra,* 417 U.S. at 314, 94 S.Ct. 2328. It is to an evaluation of the Commission's orders under that standard that we now turn.

Consolidated challenges that part of the Commission's order of July 5 which prescribes a rate of return on common equity of 11.75% with an overall return of 9.33%. Seven full pages of the July 5 order deal specifically with this issue, Order of July 5, 1977 at 8–14, as do seven pages of the August 29 order denying rehearing, Order of August 29, 1977 at 2–8. The Commission noted five criteria which Consolidated had considered in establishing its proposed rates of return: current market conditions, the yield and growth rate available to investors, earnings on book value, market book ratio, and future capital needs. The Commission then discussed the record evidence in detail, often contrasting Consolidated's testimony and calculations with those offered by the Commission's staff. This discussion is replete with specific citations to the record.

The principal complaint of Consolidated is that the rates of return allowed by the July 5 order are arbitrary and do not follow from the record evidence discussed by the Commission when viewed in light of the Commission's actions in other recent pro-

ceedings. While it is evident that the rates allowed Consolidated are not directly comparable to those allowed in other proceedings, the Commission's own reasoning in the July 5 order shows why this is so:

Consolidated argues that its proposed returns on common equity are in line with recent Commission precedent. The company compared its proposed return on common equity of 12.0% in Docket No. RP73–107 to that of the 13.69% allowed to Tennessee Gas Pipeline Company in Docket No. RP73–113 [Opinion No. 769, issued July 9, 1976]. Consolidated also compared its request for a 12.25% return on common equity in Docket No. RP74–90 with the 13.50% allowance on common equity allotted to Natural Gas Pipeline Company of America in Docket No. RP74–76 [Opinion No. 762, issued May 21, 1976]. As pointed out by PSNY, however, the ratio of common equity in all three Consolidated dockets at issue here stands—in excess of 50%. A key factor in supporting the equity return levels in the *Natural* and *Tennessee* cases, however, was the lower equity ratios for those companies. Natural's equity ratio was 36.38% in Docket No. RP74–96, and Tennessee's equity ratio in Docket No. RP73–113 was 37.09%. If Consolidated's equity ratio were also around 37%, the return on equity would be actually 14.48% based on the 9.59% claimed in Docket No. RP74–90, and using 58% debt and 5% preferred and the costs as indicated in Consolidated's capital structure on page 7, *supra.*

Order of July 5, 1977 at 13. Consolidated concedes, moreover, that it has more equity in its capital structure than some of the other companies and that this is a factor in risk. The Commission gave greater weight to this factor than Consolidated thought was appropriate, but it is apparent that through this factor the rates of return allowed to Consolidated may be "translated" into rates comparable to those allowed in the other cases.[11] Thus the rates allowed

---

11. By the same reasoning as the Commission employed, the 9.33% overall return granted by

the Commission equates, on a 58% debt, 5% preferred, 37% equity ratio (with debt and eq-

are reasonably in line with Commission precedent, and we agree with the Commission that they are fully supported by substantial record evidence.

Consolidated contends that because the Commission's reasoning process is not explicated in detail in the July 5 and August 29 orders, these orders do not amount to reasoned decisionmaking and cannot survive judicial review. "But the path which it followed can be discerned." *Colorado Interstate Gas Co. v. FPC,* 324 U.S. 581, 595, 65 S.Ct. 829, 836, 89 L.Ed. 1206 (1945). *See also Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974) ("[W]e will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.")

It is apparent that, following its detailed comparison of the evidence presented by both Consolidated and the Commission's staff, the Commission concluded that the relatively low financial risk enjoyed by Consolidated because of its high equity ratio was to be a major factor in the rate decision. This was in keeping with its recent precedent, for the Commission noted that a "key factor" in the *Natural* and *Tennessee* cases had been the lower equity ratios of those companies. Order of July 5, 1977 at 13. Applying its expertise, the Commission

then chose a rate which, allowing for the difference in equity ratios, placed Consolidated "within the zone of reasonableness" determined by its precedent for the relevant period. "[T]he Commission is not required by the Constitution or the Natural Gas Act to adopt as just and reasonable any particular rate level; rather, courts are without authority to set aside any rate selected by the Commission which is within a 'zone of reasonableness.'" *Mobil Oil, supra,* 417 U.S. at 307, 94 S.Ct. at 2345, *quoting* from *Permian Basin Area Rate Cases,* 390 U.S. 747, 767, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968).

We conclude, then, that the Commission's path to decision was sufficiently clear to permit our review. That review has revealed the Commission's decision to have been an independent one supported by substantial evidence from the record as a whole. Accordingly, the petitions for review of the Commission's July 5, 1977 and August 29, 1977 orders are dismissed and the orders are to be enforced.

uity costs as in fact incurred by Consolidated), to a return on equity of 13.78%, higher than that allowed either for *Natural* in Opinion No. 762 (13.5%) or *Tennessee* in Opinion No. 769

(13.75%. The Commission's reference in the above quote from its July 5 order to a 13.69% rates appears to be in error).