715 P.2d 927

**IDAHO STATE INSURANCE FUND,**
Appellant-Respondent,

v.

**Calvin J. HUNNICUTT,**
Respondent-Appellant.

No. 15469.

Supreme Court of Idaho.

Dec. 23, 1985.

On Denial of Rehearing
March 27, 1986.

**258**

Henry F. McQuade, and R.H. Young, Jr. (argued), of the Van Bishop Law Offices, Nampa, for respondent-appellant.

Jim Jones, Atty. Gen. and Fred C. Goodenough, Deputy Atty. Gen. (argued), for appellant-respondent.

BISTLINE, Justice.

## I.  BACKGROUND FACTS AND LAW

Calvin J. Hunnicutt was a twenty-six year, permanent employee of the state serving as a compensation insurance payroll auditor with the Idaho State Insurance Fund (ISIF). Hunnicutt was a "classified" employee of the state. This means he held a position with the ISIF "which ... is subject to the provisions of the merit examination, selection, retention, promotion, and dismissal requirements of chapter 53, title 67, Idaho Code." I.C. § 67–5302(4). As a classified employee, he could only be dismissed in a manner consistent with the laws and regulations under the jurisdiction of the Idaho Personnel Commission (Commission). I.C. § 67–5301. His discharge could only be grounded on certain enumerated causes. I.C. § 67–5309(n). Upon his discharge by the ISIF, Hunnicutt had the right to appeal for review to the Commission. I.C. § 67–5316.

A primary responsibility of the auditor position held by Hunnicutt is to conduct on-location payroll audits of firms and entities which offer workers' compensation through the ISIF. Pursuant to I.C. § 67–5309C, the ISIF set a productivity standard for these auditors of two audits per day. Although the quality of Hunnicutt's work was good, the quantity of his output fell short of the productivity standard. Ultimately, he was discharged on the grounds of inefficiency and incompetency as set out in I.C. § 67–5309(n)(2).

Hunnicutt appealed his discharge to the Personnel Commission as was his right under I.C. § 67–5316(a). Commissioner Ann Pasley-Stuart was assigned as hearing officer to Hunnicutt's case, as provided for in § 67–5316(d) and in the Idaho Personnel Commission Rules and Regulations 20.D.4. (hereinafter cited as "rules"). Hearing Officer Pasley-Stuart affirmed the discharge but only on the grounds of inefficiency.

Again invoking statutorily granted rights, Hunnicutt appealed the hearing officer's determination to the full Commission. I.C. § 67–5316(i). The Commission, in a three to one decision, rejected the decision of the hearing officer. The Commission noted that "quantity" of output was not a part of Hunnicutt's job description. The

Commission noted the ISIF's admission that the two-audit quota was a "management tool only." The Commission found that Hunnicutt was not inefficient or incompetent in the performance of his required duties but rather was performing well his required duties. Noting Hunnicutt's testimony that, in order to meet the quota, he needed to be assigned extra audits to compensate for cancellations, the Commission found that "Mr. Hunnicutt's lack of averaging two audits per working day seemed to be [a problem] of scheduling." The Commission concluded that proper cause as defined in I.C. § 67–5309(n) did not exist, and reinstated Hunnicutt pursuant to I.C. § 67–5316(c). At this juncture, the ISIF appealed to the district court, such an appeal being provided for under I.C. § 67–5316(*l*).

The district court in a summary disposition ruled that "[t]he record easily substantiates the hearing officer's determination that such a requirement [of two audits per day] is not unreasonable." The district court further found that the hearing officer's determination—that the ISIF discharge of Hunnicutt on the ground of inefficiency was justified—"was based upon a reasonable view of the evidence that was presented. . . ."

The district court apparently saw itself as the third step in the appeal and review process, and saw its function as having to determine whether the Commission erred in its reversal of the hearing officer. In this perceived role, the district court reversed the Commission, and reinstated the hearing officer's affirmance of Hunnicutt's discharge.

## II. OPINION

### A. *The Issue of Whether the Commission's Findings of Fact as a Matter of Law Supported Its Decision.*

The district court's perception that it was to review the Commission's reversal of the hearing officer constituted a fundamental misconception of the relationship between the hearing officer and the full Commission, and of its own function as a reviewing

court. Upon Hunnicutt's appeal of the hearing officer's decision, the Commission was entitled to review the record *de novo,* and "revise the decision and order of the member or presiding officer, in whole or in part. . . ." I.C. § 67–5316(i). The decision of the full Commission was not a mere reversal of a lower tribunal; rather, the new decision effectively displaced the *proposed* decision of the hearing officer (albeit that in the absence of an appeal to the full Commission the hearing officer's decision would have become the decision for the Commission).

■ The full Commission's decision and order, then, was the final agency action to which the district court should have directed its attention. *Swisher v. State Department of Environmental and Community Services,* 98 Idaho 565, 567, 569 P.2d 910, 912 (1977). It was not the function of the district court to determine whether the hearing officer's determination was reasonable in light of the record, or to weigh the decision of the hearing officer against that of the Commission. Rather, the district court's function was to review the "decision of *the commission*" in order to determine whether to "affirm or set aside such order or remand the matter to the commission. . . ." I.C. § 67–5316(*l*) (emphasis added).

I.C. § 67–5316(*l*) sets out exclusive grounds upon which the district court could set aside or remand a decision of the Commission:

Upon appeal of a decision of the commission, the district court may affirm or set aside such order or remand the matter to the commission only upon the following grounds, and shall not set the same aside on any other or different grounds, to wit:

(1) That the findings of fact are not based on any substantial competent evidence;

(2) That the commission has acted without jurisdiction or in excess of its powers;

(3) That the findings of fact by the commission do not as a matter of law support the decision and order.

The district court set aside the decision of the Commission based on the third ground, holding that "the reversal of this finding of fact [by the hearing officer] of inefficiency by the Commission does not as a matter of law support their ultimate decision and order."

■ A cursory examination of the Commission's decision belies this holding. The Commission found as a matter of fact that Hunnicutt "did not demonstrate inefficiency or incompetency in the performance of his required duties." Inefficiency and incompetency were the reasons given for Hunnicutt's discharge. To the contrary, the Commission found that Hunnicutt was "doing well the very things he is required to do ... in our job description." "Mr. Hunnicutt's lack of averaging two audits per working day," the Commission found, "seemed to be [a problem] of scheduling." Consequently, the Commission found that proper cause for Hunnicutt's discharge did not exist. I.C. § 67–5316(c) provides that "upon determination that proper cause did not in fact exist within the definitions set forth in section 67–5309(n), Idaho Code ... the commission shall order the reinstatement of the employee...." *By definition* the Commission's findings of fact that proper cause did not exist as a matter of law supported its determination that Hunnicutt was to be reinstated pursuant to I.C. § 67–5316(c).

B. *The Issue of Whether the Commission's Findings of Fact Were Based on Any Substantial Competent Evidence.*

At oral argument, the ISIF conceded that the district court erred in its ruling. However, the ISIF advanced as an alternative basis for affirmance the first ground enumerated in I.C. § 67–5316(*l*): "(1) That the findings of fact are not based on any substantial competent evidence." Accordingly, we examine the record to determine wheth-

er the Commission based its findings of fact on any substantial competent evidence.

1. The Substantial Competent Evidence Test.

In *Local 1494 of the International Association of Firefighters v. City of Coeur d'Alene*, 99 Idaho 630, 586 P.2d 1346 (1978), this Court discussed the test for determining what constitutes substantial evidence for the purposes of judicial review of an administrative agency's action. We observed:

The "substantial evidence rule" is said to be a "middle position" which precludes a *de novo* hearing but which nonetheless requires a serious review which goes beyond the mere ascertainment of procedural regularity. *Id.* at 633, 586 P.2d at 1349.

Such a review requires more than a mere "scintilla" of evidence in support of the agency's determination, *id.* at 634, 586 P.2d at 1350, though "something less than the weight of the evidence." *Consolo v. FMC*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). "Put simply," we wrote, "the substantial [competent] evidence rule requires a court to determine 'whether [the agency's] findings of fact are reasonable.'" 4 Davis, Administrative Law Text § 29.01–02 at 525–530." *Local 1494, supra*, 99 Idaho at 634, 586 P.2d at 1350; *see also Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126.") (cited with approval in *Local 1494, supra* ).

■ In deciding whether the agency's findings of fact were reasonable, reviewing courts should not "read only one side of the case and, if they find any evidence there," sustain the administrative action and ignore the record to the contrary. *Universal Camera, supra*, 340 U.S. at 481, 71 S.Ct. at 460; *quoted in Local 1494, supra*, 99 Ida-

ho at 634, 586 P.2d at 1350. Certainly reviewing courts should not "displace the [agency's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*" *Universal Camera, supra,* 340 U.S. at 488, 71 S.Ct. at 464; *accord, Swisher, supra,* 98 Idaho at 570, 569 P.2d at 915; *Ajax Paving Industries, Inc. v. National Labor Relations Board,* 713 F.2d 1214, 1217 (6th Cir. 1983) ("In conducting its review for substantial evidence the appellate court is not to substitute its own view of the evidence for that of the [agency]...."); *cf.* I.C. § 67–5215(g) ("The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact."). Nevertheless, reviewing courts should evaluate whether "the evidence supporting that decision [under review] is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the [agency's] view." *Universal Camera, supra,* 340 U.S. at 488, 71 S.Ct. at 464; *quoted in Local 1494, supra,* 99 Idaho at 634, 586 P.2d at 1350; *accord, Local One, Amalgamated Lithographers v. National Labor Relations Board,* 729 F.2d 172, 175 (2d Cir.1984).

■ Reviewing courts should not automatically reject an agency finding of fact that is supported by substantial competent evidence "merely because the agency also incidentally mentions incompetent or irrelevant material." *Braniff Airways, Inc. v. CAB,* 379 F.2d 453, 466 (D.C.Cir.1967); *quoted in Consolidated Gas Supply v. Federal Energy Regulatory Commission,* 606 F.2d 323, 329 (D.C.Cir.1979), *cert. den.* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755. If this happens, "[t]he appropriate standard is to remand for correction of an error only when there is substantial doubt that the administrative agency would have reached the result it did absent reference to the material. [Citations.]" *Consolidated Gas, supra,* 606 F.2d at 329.

2. Substantial Competent Evidence and the Decision of the Commission.

With those standards of review established, we now apply them to the decision of the Commission, evaluating both the evidence in the record which supports the decision of the Commission and the evidence weighing against it. Finally, we will decide whether in light of the whole record, there existed substantial competent evidence to render the Commission's finding of fact a reasonable one.

The record reflects without dispute that the quality of Hunnicutt's work was good. While testifying for the ISIF, the manager of the ISIF, Diane Plastino, stated that "Mr. Hunnicutt has a great deal of knowledge about the State Insurance Fund and about Worker's Compensation." Transcript of Hearing Before Hearing Officer at 61 (Oct. 20, 1982) (hereinafter cited as "Tr."). At the hearing on Hunnicutt's motion to reopen the case before the full Commission so as to allow the introduction of additional evidence, counsel for the ISIF noted:

> "[W]e are perfectly willing to admit that Mr. Hunnicutt's qualified. He's been working for the State Insurance Fund or the State, I'm not sure which, for 26 years. We're perfectly willing to admit Mr. Hunnicutt's qualified. But that doesn't produce audits.... And the fact that he is nice and gets along with his clients out in the field, that doesn't produce audits either." Transcript of Hearing on Reopening Case at 7 (May 13, 1983) (hereinafter cited as "Tr. on Reopening").

Plastino testified that the quality of work on audits and the relationship between the auditors and their clients are important. Tr. at 59.

In addition to the above evidence, which the ISIF does not dispute, the Commission in its opinion referred to two exhibits Hunnicutt had offered at the hearing before the hearing officer. These exhibits were memoranda to Hunnicutt from his supervisor commending him for work on several audits. The ISIF contends that neither was

admitted at the hearing, and argues that the Commission violated its own rules by considering them.

Whether the Commission should not have considered these exhibits, however, is of little moment.[1] In its effort to exclude the exhibits, the ISIF *stipulated* to precisely the same point for which the exhibits were offered, and to precisely what the Commission found as a matter of fact. Counsel for the ISIF stated: "[T]he Fund wouldn't have any difficulty stipulating that Mr. Hunnicutt performed audits—when he did perform the audits, they were performed with some degree of quality." Tr. at 33. The stipulation has all of the force of evidence, and was equally substantial as the offered exhibits. In stipulating, ISIF thereby conceded that Hunnicutt's audits were quality productions, rather than the isolated examples alluded to in the exhibits.

The ISIF offered into the record evidence that it had established a production standard of two audits per day which Hunnicutt had not met. Except for a temporary increase in production during 1981, Hunnicutt had failed to attain the standard through 1980, 1981, and the first half of 1982. Tr. at 7, 16. Hunnicutt was called in for reviews, and suffered one temporary reduction in salary because of low production. Tr. at 12.

The parties dispute the significance of the production standard. The ISIF apparently established the standard pursuant to I.C. § 67–5309C(c),[2] which provides:

(c) It is hereby declared to be the intent of the legislature that the *advancement* of an employee to steps providing an increased salary within each pay grade shall be based solely on merit, including factors such as increased productivity, reliability, effectiveness, and the ability to achieve the goals and objectives of the particular position. No em-

ployee shall *advance* to a higher step within a pay grade without an affirmative certification for such purpose by the employee's immediate supervisor, approved by the departmental director or the director's designee, in accordance with the following schedule and criteria.... (Emphasis added.)

This subsection on its face pertains to the *advancement* of an employee; it makes no provision for the *discharge* of an employee who failed to meet a productivity standard.

As already noted, classified employees may only be discharged for cause. The causes enumerated in I.C. § 67–5309(n) do not include the failure to attain a productivity standard established pursuant to I.C. § 67–5309C(c). In addition, I.C. § 67–5309 provides the *Commission*, not individual agencies, with "the power and authority to adopt, amend or rescind" rules of discharge or reduction of rank or grade. Simply stated, the failure of ISIF auditors to meet productivity standards alluded to in § 67–5309C(c) was not included in any of the grounds for discharge under § 67–5309(n). The ISIF basically conceded that its productivity standard was not a rule of discharge when it described the two audit per day requirement variously as "management technique" and a "management tool" only.

The enumerated rules of discharge include "[i]nefficiency, incompetency, or negligence in the performance of duties." I.C. § 67–5309(n)(2). The failure to meet a productivity standard would be competent evidence of charged inefficiency.

In its weighing of the evidence offered to establish the claimed inefficiency, the Commission would be expected to consider the evidence of Hunnicutt's failure to meet the productivity standard. We do not see that the Commission failed to give consideration to that evidence. Rather, the Commission

---

**1.** The hearing officer never ruled on the ISIF's objection, nor did she rule that the exhibits were rejected. The record which the hearing officer submitted to the full Commission *included* the exhibits and the exhibit list designated them as *admitted.*

**2.** I.C. § 67–5309C(a) introduces that part of the law which sets out a comprehensive schedule of almost 50 pay grades, and seven advancing steps of hourly rates of pay. Subparagraph (b) deals with longevity pay.

specifically ruled that (1) evidence of Hunnicutt's low productivity was negated by other evidence which showed that Hunnicutt's low productivity was a logistical problem rather than a human failing; and (2) that such evidence was outweighed by evidence of Hunnicutt's good quality of work.

In the process of establishing what weight to give the evidence related to the issue of Hunnicutt's productivity, the Commission naturally looked to the description of the job for which he was employed. That description requires the ability to: recognize different accounting methods used by business and governmental entities; determine how salary and fringe payments are made in different accounting systems; interpret workers' compensation laws, National Council on Compensation Insurance rules and regulations, and policy contracts; analyze records to determine direct and indirect employer payrolls; recognize errors in payroll records and potential premium adjustment; work independently in arranging appointments for audits and follow-up; communicate effectively both orally and in writing; maintain good rapport with policyholders.

The Commission took careful note that this description "does not mention *quantity* of job audits to be performed daily but it does refer to content and *quality* required." (Emphasis added.) The Commission further noted the ISIF's characterization of the production standard variously as a "management tool" and a "management technique." The Commission concluded, "We find that all *state employees* should be judged on the quality *as well as* the quantity of work performed by said employees. Judging an employee on quantity performance *only* is neither desirable nor equitable." (Emphasis added.) This sentence adequately demonstrates that the Commission considered both quality and quantity. It is not for this Court to disagree with the Commission's belief that quality of work should be considered in passing on a charge of inefficiency. Audits done quickly but inaccurately do not

equate to audits competently or efficiently rendered. ISIF manager Plastino said as much in her testimony. Tr. at 59.

The Commission considered the quantity evidence at some length. It noted Hunnicutt's testimony that scheduling problems and policyholders' cancelling appointments had interfered with meeting the two-audit standard. It noted also that he had requested extra audits to compensate for the cancellations. The Commission concluded not that productivity was irrelevant or unimportant, but that Hunnicutt's problem "of averaging two audits per working day seemed to be one of scheduling."

The Commission observed that the ISIF had concerned itself only with the quantity and not the quality of Hunnicutt's work. The Commission reviewed the evidence of the quality of Hunnicutt's work, observed that his problem with quantity of audits was not due to slothfulness and was not irreversible, and concluded that Hunnicutt "did not demonstrate inefficiency or incompetency in the performance of his required duties—the duties specified in the description of his job—Compensation Insurance Payroll Auditor."

The ISIF argues that the Commission erred in considering the job description. This contention is based on the premise that the hearing officer had not mentioned the job description in her decision. Respondent's Brief, p. 6. Such an argument is without merit. The ISIF did not raise it as an issue on appeal; therefore, the issue is not properly before us.

■ Furthermore, regardless of ISIF's argument on this matter, we note that the Commission may, and in fact must, observe and be bound by its own rules. I.C. § 67–5309(a) required the Commission to make a rule requiring itself to describe an ISIF auditor's "duties and responsibilities ... and requirements of minimum training, experience and other qualifications, suitable for the performance of duties of the position." The Commission did so. Taking cognizance, or notice, of the job description which it had itself made for the job which

Mr. Hunnicutt held was not only proper, *but required.* For certain it was not engaged in "finding" a fact. It was merely observing its own handiwork done pursuant to a rule, the making of which was legislatively mandated. The fact that the hearing officer, also a member of the Personnel Commission, may not have done so, or if having done so, thought the job description of no importance, did not in one iota preclude the Commission from doing so. The Commission was well within its powers to notice its own job description. *Cf. Hubbard v. Canyon County Commissioners,* 106 Idaho 436, 437, 680 P.2d 537, 538 (1984) (under I.C. § 67–5210(4) of the APA, an agency "is entitled to take judicial notice of its own [regulatory enactments]. . . .")

Significant to this appeal is the fact that the ISIF does not dispute the *accuracy* of the noticed job description or its *relevance* to this case; it merely stands on its rather questionable argument that the Personnel Commission was precluded from considering any law, rule, regulation, or description of Hunnicutt's job, which it had drafted. For the above stated reasons, we disagree with ISIF on this matter and note that it is difficult to comprehend how the Commission, or the hearing officer in the first instance, could evaluate Hunnicutt's job performance without reference to his job description.

### 3. The Commission's Findings of Fact Were Supported by Substantial Competent Evidence.

The opinion of the Commission reflects a consideration of the evidence concerning Hunnicutt's failure to attain the productivity standard as well as the evidence of Hunnicutt's long experience, extensive knowledge, good relations with clientele, and good quality of work on audits. The judgment of the Commission was that (1) the former was a problem not attributable to slothfulness and was not irreversible, and (2) the latter was of greater significance in evaluating whether Hunnicutt was inefficient or incompetent in the perform-

ance of his duties. The Commission concluded that proper cause to discharge Hunnicutt did not exist.

■ In light of the record viewed as a whole, we hold that substantial competent evidence supports these findings. It is not for us to determine the weight of evidence *de novo;* rather we must affirm the Commission if substantial competent evidence exists to support its decision. As Justice Bakes has explained, where conflicting testimony could support the Commission's decision either to find that the employee was discharged for cause or to find that the employee was not discharged for cause, the findings of fact of the Commission are "based upon substantial competent evidence and do not as a matter of law fail to support the Commission's decision and order." *Swisher, supra,* 98 Idaho at 570, 569 P.2d at 915. Even if the record was expunged of those evidentiary matters which the ISIF contends to have been wrongly considered—the exhibits and the job description—the Commission still had before it other substantial evidence to support its findings, much of which was supplied by the ISIF itself through the testimony of its officers and the statements and stipulations of its counsel.

### C. *Conclusion.*

We hold that the district court erred in setting aside the decision of the Commission. We further hold that the record contains substantial competent evidence to support the Commission's factual determination that Hunnicutt was not inefficient or incompetent in the performance of his duties.

The decision of the district court is reversed; the decision of the Commission is reinstated.

Costs are awarded to Hunnicutt. Because the ISIF conceded error on the part of the district court, and nevertheless defended against this appeal, Hunnicutt is entitled to attorney's fees.

DONALDSON, C.J., and HUNTLEY, J., concur.

SHEPARD, J., concurs in the result.

BAKES, Justice, concurring specially:

I concur in all of the majority opinion except that portion which agrees with the decision of the Personnel Commission which concluded that I.C. § 67–5309(n) and the commission rule promulgated thereunder do not permit the discharge of an employee for inefficiency or incompetency in the performance of duties, merely for failure to attain the productivity standards of the agency. The Personnel Commission was of the opinion that an employee cannot be judged solely on the *quantity* of his performance. While I agree with the commission that quality should be considered in each case, no agency should be required to retain an employee who is unwilling or unable to meet a reasonably established minimum level of performance. I believe the commission's view in this regard is erroneous as a matter of law.

However, there was substantial, albeit conflicting, evidence that the cause for the employee's failure to meet productivity was the result of the agency's failure to schedule sufficient audits, and accordingly I concur on that basis.[1] It would be far better if this Court were to remand this case to the Personnel Commission for reconsideration, with the instruction that "inefficiency and incompetency" may be established by the failure of an employee to meet reasonably established productivity levels of performance, regardless of the quality of the work which the employee does in fact perform.

### ON DENIAL OF PETITION FOR REHEARING

PER CURIAM.

Recognizing that by reason of clerical error and judicial oversight attorney's fees were awarded to Mr. Hunnicutt, that portion of our December 23, 1985 opinion is now stricken. Otherwise, the Petition for Rehearing is denied, and the remittitur may issue forthwith.

---

1. The commission's determination that the employee's failure to meet the productivity levels was caused in part by the failure of the agency to schedule sufficient audits is somewhat contradicted by the commission's own established minimum qualifications of a "compensation insurance payroll auditor," which the commission describes on page 2 of its decision and order as including, among other things, the ability to "work independently in arranging appointments for audits and follow up."