742 P.2d 992

**DEPARTMENT OF HEALTH AND WELFARE, Petitioner-Appellant,**

v.

**Maria G. SANDOVAL, Respondent-Respondent.**

No. 16560.

Court of Appeals of Idaho.

Aug. 3, 1987.

Jim Jones, Atty. Gen. by James F. Wickham and Michael R. DeAngelo (argued), Deputy Attys. Gen., Boise, for petitioner-appellant.

William F. Gigray, III, and Scott E. Fouser (argued), Gigray, Miller, Downen, Weston & Pasley, Caldwell, for respondent-respondent.

BURNETT, Judge.

In this appeal we must decide what degree of deference should be accorded to findings of fact made by the Personnel Commission, when those findings conflict with a credibility determination made by the Commission's own hearing officer. The question is framed by facts surrounding the discharge of a state employee.

On December 22, 1983, it was discovered that a mentally retarded resident at the Idaho State School & Hospital had been beaten severely. An investigation ensued. A hospital worker asserted that another employee, Maria Sandoval, had admitted beating the resident. Sandoval was terminated from employment by the Idaho Department of Health and Welfare. She appealed to the Idaho Personnel Commission. A hearing officer took testimony. The hospital worker repeated her assertion. Sandoval denied that she had beaten the resident or that she had ever admitted doing so. The hearing officer credited the hospital worker's testimony, and he found that Sandoval had been discharged for cause. After reviewing a cold record, the Personnel Commission disagreed with its hearing officer and ordered Sandoval to be reinstated. The Department of Health and Welfare appealed the Commission's ruling to the district court, where it was affirmed. The Department then brought its appeal to us, contending that the Personnel Commission erred by (1) applying the wrong standard of review to the Department's determination of cause for termination; (2) rejecting the credibility determination of its hearing officer; and (3) improperly requiring corroboration of the hospital worker's testimony against Sandoval. For reasons stated below, we vacate the district court's order and direct that the case be returned to the Commission for further consideration.

I

We first examine the relationship between the Department of Health and Welfare and the Personnel Commission. The Department argues that the Commission owed deference to factual determinations made by the Department when it terminated Sandoval. Indeed, the Department urges that the Commission must uphold any agency's finding of cause for terminating an employee if the finding is supported by "substantial evidence." Sandoval responds that the Department stood before the Commission as a party in an original proceeding, and that the Department had the burden of proving cause for termination. On this point, we agree with Sandoval.

Although the statutes governing the Personnel Commission provide that the district court will affirm Commission findings when supported by substantial evidence, the statutes nowhere articulate the standard to be applied by the Commission when reviewing a departmental or agency personnel action. Our attention is invited to

the statutory reference to an "appeal" of personnel actions, and it is suggested that such terminology signifies a deferential function for the Commission in reviewing issues of fact. *See* I.C. § 67–5316(a). However, the Legislature also has used the term "appeal" in providing for court review of Commission actions, yet in that context the Legislature has deemed it appropriate to specify a "substantial evidence" standard. *See* I.C. § 67–5316(*l*).[1] Further, the Commission is required to conduct an evidentiary hearing. Such hearings are conducted in the procedural framework provided by the Administrative Procedure Act. *See* I.C. § 67–5316(a). For instance, the employee has a right to notice and a hearing. I.C. § 67–5209. The Idaho Rules of Evidence apply. I.C. § 67–5210. Ex parte communications between fact-finders and involved parties are prohibited. I.C. § 67–5213. A verbatim record of the proceedings must be maintained. I.C. § 67–5315(d). The intra-agency grievance procedure, on the other hand, is informal in nature and it contains fewer procedural safeguards. *See* I.C. § 67–5309A(4).

Thus, on the whole, the statutory scheme envisions the Commission as a finder of fact.[2] It is difficult to conceive why the Commission, equipped with an elaborate fact-finding machinery designed to render fair and objective determinations, would be expected to defer to agency findings which are made informally and which are not dependent upon the exercise of agency expertise. Agency employees, who are involved in the day-to-day business of running government facilities, and who could be personally involved with the employee in question or with the problem to be resolved, may lack the impartiality and detachment which entitles certain fact-finding tribunals to deferential review.[3]

■ Accordingly, we conclude that proceedings before the Commission are *de novo*.[4] An agency bears the burden of

---

1. Shortly after the Personnel Commission decided this case, the Legislature amended and reorganized Chapter 53. Except where otherwise indicated, we cite in this opinion to the version of the statute applicable at the time the Commission rendered its decision.

2. Under former I.C. § 67–5316, the Commission could either conduct an evidentiary hearing itself or assign the case to a hearing officer. I.C. § 67–5316(h). If the case was assigned to a hearing officer, and a party sought review, the Commission could, but was not required, to rehear the evidence in whole or in part. I.C. § 67–5316(i). However, the present statutory scheme—not in effect at the time the Commission decided this case—envisions that the hearing officer will conduct all evidentiary hearings. I.C. § 67–5316. The Commission may review the record, transcripts, briefs, and oral argument by the parties, but cannot take further evidence. I.C. § 67–5317.

3. Our Supreme Court has elaborated on the reasons why some agency determinations are entitled to greater deference than others:

   Another factor which serves to vary the intensity of ... review of agency decisions is the structural make-up and function of the agency. At the one extreme there exist agencies like the Industrial Commission which, by statute, are balanced to reflect the conflicting interests which they routinely adjudicate and which function with a degree of detachment from earlier proceedings which parallels that of the judiciary itself. At the other extreme, there exist elected agencies such as school boards which must occasionally serve in the combined roles of complainant, prosecutor and judge and which have daily familiarity with the parties to a dispute. While there is nothing constitutionally impermissible about such a structure, a district court will not be blind to the distinction....

   *Local 1494 of the Int'l Ass'n of Firefighters v. Coeur d'Alene*, 99 Idaho 630, 635, 586 P.2d 1346, 1351 (1978). *See also Holloway v. Palmer*, 105 Idaho 220, 668 P.2d 96 (1983).

4. Interestingly, the Commission's hearing officer used language in his proposed decision that could be read to reflect the application of either a *de novo* or deferential standard. The officer made an unequivocal finding that "[t]he injuries [of the resident] were incurred and were the result of the resident being struck with a belt by Appellant Sandoval on or about December 23, 1983." In discussing whether this act constituted grounds for dismissal, however, the officer stated that "[t]he evidence, though conflicting, in some aspects, is substantial and competent that the conduct exhibited by [Sandoval] constitutes cause supporting the disciplinary action by the Department. Such tactics and actions taken by Appellant cannot be condoned." Taken in context, it is evident that the officer, although employing loose language regarding the proper standard of review, understood his role to be that of fact-finder. He was independently satisfied that the Department had met its burden to show that Sandoval committed the beating.

persuading the Commission that employee misconduct has occurred. This approach is consistent with that of the federal system. In proceedings before the Merit Systems Protection Board involving employee termination, the agency must prove employee misconduct by a preponderance of the evidence. *See* 5 U.S.C. §§ 7701(c)(1) and 7513.

## II

■ The next question, which is central to this appeal, is how the Commission as a fact-finder relates to its hearing officer and to the reviewing courts. The standard of review by the courts is disarmingly, and perhaps deceptively, simple. We may overturn a decision of the Commission only if "the findings of fact are not based on any substantial competent evidence." I.C. § 67–5316(*l*). Our Supreme Court has discussed the meaning of this standard in the broad context of judicial review of administrative action. The Court has explained that a judge must decide whether the agency's findings of fact are "reasonable." *See Idaho State Insurance Fund v. Hunnicutt,* 110 Idaho 257, 260, 715 P.2d 927, 930 (1986). In arriving at his conclusion, the judge should determine whether the evidence supporting the agency decision is substantial when viewed in the light of the entire record, including the body of evidence opposed to the agency's view. *Id.* This standard is somewhat less deferential than that applied to jury verdicts and findings of fact by trial judges. *Standards of Appellate Review in State and Federal Courts,* IDAHO APPELLATE HANDBOOK § 3.3.3 (Idaho Law Foundation, Inc. 1985). The practical import of this standard, as applied to the Personnel Commission is that where—as here—the Commission has found that an agency failed to meet its burden of proving employee misconduct, we should overturn that finding only if the Commission lacked a reasonable basis to disbelieve the agency's evidence.

■ The Department would have us qualify this deferential standard by holding that the Commission must accept the credibility determinations of its hearing officer if they are supported by substantial evidence. In essence, the Department sees the Personnel Commission as an intermediate appellate body and urges that the courts, like the Commission, must give deference to the hearing officer's findings of fact. However, this argument misapprehends the relationship of the Commission to its hearing officers. As the Idaho Supreme Court has explained, the hearing officer's ruling is merely a proposal which may be supplanted by a different decision by the Commission. *Idaho State Insurance Fund v. Hunnicutt,* 110 Idaho at 259, 715 P.2d at 929. Our statutory mandate is to review the final decision of the Commission, not the decision proposed by the hearing officer. I.C. § 67–5316(*l*).[5]

Nevertheless, common sense indicates that in weighing the reasonableness of the Commission's findings, a court can not wholly disregard the hearing officer's impressions drawn from first-hand exposure to the witnesses. The report of a hearing officer is part of the entire record embraced by judicial review. Again, the federal courts share this approach. *See Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. 474, 493, 71 S.Ct. 456, 467, 95 L.Ed. 456 (1950) (discuss-

---

5. The Department urges that the Commission erred in failing to specifically find that "proper cause did not in fact exist" to discharge Sandoval. *See* I.C. § 67–5316(*l*). In this case, the hearing officer carefully set out his findings of fact and conclusions of law; the Commission did not. However, our Supreme Court has made clear that shortcomings in the Commission's findings of fact do not constitute reversible error, *per se,* at least where the Commission's conclusions and reasoning are clear from its written opinion. *Swisher v. Dept. of Environmental & Community Services,* 98 Idaho 565, 570 n. 3, 569 P.2d 910, 915 n. 3 (1977). *But see*

*Int'l Ass'n of Firefighters, supra* (Donaldson, J., dissenting) (agencies must make basic findings before deciding ultimate facts). Here, the beating was the only grounds asserted for Sandoval's dismissal. The Commission explicitly found that the Department did not meet its burden to prove the incident. We will not reverse merely because the Commission failed to invoke the magical incantation that "proper cause did not exist." A more troubling deficiency, discussed *post,* is the Commission's failure to articulate the reasoning which led it to reject its hearing officer's credibility determination.

ing the Taft-Hartley and Federal Administrative Procedure Acts). As the United States Supreme Court explained in that case:

> We do not require that the examiner's findings be given more weight than in reason and in light of judicial experience they deserve. The "substantial evidence" standard is not modified in any way when the Board and its examiner disagree. We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case.

*Id.* 340 U.S. at 496, 71 S.Ct. at 469.

Of course, the Personnel Commission need not accept the hearing officer's factual determinations on every case where credibility of witnesses is a factor. The hearing officer's sole advantage over the Commission as a fact-finder is his ability to observe the demeanor of the witnesses. There are numerous other indicia of credibility that can be ascertained as easily from the record as from live testimony. For instance, there may be significant inconsistencies in a witness's testimony or between that testimony and other facts established at the hearing. There may be evidence indicating that the witness was biased, had a motive to lie, or was unable to perceive clearly the subject matter of the testimony. The force of other evidence may be so strong that the demeanor of a particular witness, however earnest, pales in comparison. Thus, there will be many cases where the Commission need not rely upon or accept the credibility determinations of its hearing officer.[6] But where credibility is crucial and where first-hand exposure to the witnesses may strongly affect the outcome, we think the Personnel Commission should not override the hearing officer's impressions unless it makes a cogent explanation of its reasons for doing so. Such an explanation is essential to meaningful judicial review, and it is a logical adjunct to the Commission's statutory duty to supplement its decisions with findings of fact and conclusions of law. *See* I.C. § 67–5316(h).[7]

With this in mind, we now return to the facts of the instant case. It was uncontroverted that on December 22, 1983, an adult male resident at the Idaho State School & Hospital showed severe bruising over a wide portion of his body, including his collarbone, legs and an area above the kidneys. Photographs of the injuries, taken a week later, were admitted into evidence. Although the resident sometimes engaged in "self-abuse," the injuries observed on December 22 were different from any he previously had sustained. The location and nature of these injuries strongly suggested that they were not self-inflicted. Sandoval was the staff member in charge of the victim and of seven other residents on the day shift during much of the week preced-

---

**6.** As noted above, the Personnel Commission was empowered to rehear the testimony itself at the time this case was decided. I.C. § 67–5316(i). Although the Commission can no longer do so, it can remand the case to the hearing officer for further testimony and findings. I.C. § 67–5316(*l*).

**7.** Requiring the Commission to explain why it has decided to override a hearing officer's determinations of credibility is not inconsistent with *Hunnicutt.* In that case, the employing agency dismissed the employee because he did not meet the agency's target of two audits per day. There were no credibility issues, and the underlying facts were not in dispute. Rather, the "question of fact" for determination was whether the cir-

cumstances added up to employee inefficiency sufficient to support dismissal. The hearing officer answered that question in the affirmative, and the Commission reversed. The Commission believed that the undisputably high quality of the employee's work, as well as its quantity, should be considered. In *Hunnicutt,* the expertise of the Commission, rather than the hearing officer's ability to observe the demeanor of the witnesses, was of central importance to the proper resolution of the case. Our decision today simply obliges the Commission to act with extra caution where witnesses' demeanor may be of central importance to the outcome of the case.

ing discovery of the injuries. Other staff members supervised the residents during the remaining shifts.

Sandoval testified that the residents sometimes would push each other, slam doors or throw objects. She identified another retarded resident as an individual who could have been responsible for the beating. The Department presented rebuttal testimony from a psychologist, who stated that the resident identified by Sandoval had no history of violence. The psychologist acknowledged that the resident occasionally made sexual advances to other residents; however, he was partially paralyzed, had trouble walking, and was of limited physical strength. The victim, on the other hand, was a "physically complete" adult male.

The primary conflict in the evidence was the discrepancy between the testimony of Sandoval and that of the hospital co-worker who said Sandoval had admitted the beating. The co-worker testified that she had received a telephone call from Sandoval on January 2, 1984. According to the co-worker, Sandoval stated that she had beaten the resident with a belt, that a nurse had checked the injuries, and that Sandoval feared she would get in trouble. Sandoval, on the other hand, denied that she had struck the resident and denied that she had ever called the co-worker. As noted earlier, the hearing officer disbelieved Sandoval and credited the testimony of her co-worker. The Personnel Commission decided otherwise.

The Commission did not explain why it chose to reject the co-worker's testimony and to reject the impressions of the hearing officer. Sandoval contends that a reason may be found in contradictions in the co-worker's testimony. However, we fail to discern significant inconsistencies. For example, Sandoval argues that if she had beaten the resident on or before December 22, she would not have waited until January 2 to tell the co-worker. However, the injury was not discovered until December 29 and the co-worker did not work from December 30 through January 1, 1984. Thus, the delay is entirely understandable.

Sandoval also argues that she would not have called her co-worker at the school unit of the hospital complex, where the latter claimed to have been working on January 2, because Sandoval herself was working in that unit on that date. However, this claim conflicts with Sandoval's own testimony that she had already been assigned to a different unit by that date.

In short, the record does not permit us to infer with confidence a reason for the Personnel Commission's departure from the hearing officer's credibility determination. Neither does the Commission's written decision enable us to deduce the reason. The only hint of such a reason lies in the Commission's statement that "we are appalled that such injuries could apparently go undetected for a week." This might be taken to suggest that the Commission thought the injuries actually were incurred at a time earlier than reports had indicated, and that the co-worker, or someone else other than Sandoval, was responsible. However, this would be reading a great deal into the Commission's statement. It would be equally reasonable to conclude that the Commission—perhaps justifiably—was expressing its dismay at the level of care provided in the hospital. In any event, dissatisfaction with management of the hospital would hardly be a proper reason for reinstating an employee discharged for misconduct.

We hold that, absent a cogent explanation, the Commission lacked a reasonable basis to disbelieve the evidence which the hearing officer found credible. We recognize, however, that the Commission may not have felt that it was under any obligation to furnish such an explanation. Accordingly, we conclude that the case should be returned to the Commission for reconsideration of whether a genuine, articulable reason exists. If so, the reason must be stated. If not, the Department's action should be upheld.

### III

For guidance on remand, we address the Department's final contention—that the Commission's decision erroneously con-

tained a *per se* rule requiring corroboration of an accusing witness's testimony before an employee may be disciplined or terminated. The language of the Commission's decision is indeed susceptible of this interpretation:

> While Miss Bernie Parks, Rehabilitation Technician and primary on Cottage 4 ... alleges she received a phone call from [Sandoval] stating that "she had whipped Chris [the mentally retarded resident] with a belt and that the nurse had checked him and that she thought she was in trouble," [Sandoval] totally denies making the call or injuring Chris.... In the absence of any evidence to support Bernie Parks' statement that [Sandoval] had telephoned her on the day in question, we find the [Department] has not rebutted [Sandoval's] denial that she beat Chris ... with a belt or any other object.[8]

A *per se* approach is no substitute for a particularized analysis of the evidence. We are aware of no rule of law requiring the corroboration of an accusation in this kind of case. In fact, no such *per se* rule exists anywhere in Idaho law. Although the courts of this state at one time required corroboration of a prosecutrix's testimony in a sex crime prosecution, even that requirement now has been abolished by our Supreme Court. *See State v. Byers*, 102 Idaho 159, 627 P.2d 788 (1981). We deem it evident that if uncorroborated testimony may be sufficient to support a finding of guilt beyond a reasonable doubt in a criminal case, it may also be sufficient to support a finding by a preponderance of the evidence that an employee committed an act constituting the basis for discipline or dismissal.[9] On remand, the Commission may not base its decision solely upon a lack of corroboration.

Sandoval seeks attorney fees on appeal under I.C. § 12–117. However, fees are not allowed under that statute unless the court finds in favor of the party seeking them and further determines that the agency acted without a reasonable basis in fact or law. Here, the agency—the Department of Health and Welfare—has prevailed on appeal. Accordingly, no fees will be awarded.[10]

The district court's order, affirming the Personnel Commission's reinstatement of Sandoval, is vacated. The case is remanded with direction to return it to the Commission for further consideration consistent with this opinion. Costs to the appellant, Department of Health and Welfare.

WALTERS, C.J., and SWANSTROM, J., concur.

---

8. The Department's decision to terminate Sandoval was based in part on testimony of school residents. Perhaps because counsel believed the residents would not be effective witnesses, they were not brought before the hearing officer. Sandoval successfully objected on the ground of hearsay to testimony of a witness who interviewed the residents.

9. Of course, this does not mean that a trier of fact is *required* to believe the uncorroborated testimony of a witness. Rather, it simply means that he is entitled to do so if satisfied that the burden of proof has been met.

10. Amendments to I.C. §§ 12–120 and 12–121, allowing recovery of attorney fees by the state against a private party under certain circumstances, did not become effective until July 1, 1987. Consequently, these amended statutes are not applicable to the present case.