859 P.2d 337

**Stan POMERINKE, Claimant–Appellant,**

v.

**EXCEL TRUCKING TRANSPORT, INC., Employer,**

**and**

**Liberty Northwest Insurance Corporation, Surety, Defendants–Respondents.**

**No. 19706.**

Supreme Court of Idaho,
Coeur d'Alene, May 1993 Term.

Sept. 3, 1993.

Cheri L. Bush, Sandpoint, for claimant-appellant.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chtd., Boise, for defendants-respondents. Robert L. Berlin argued.

TROUT, Justice.

This is an appeal from an order of the Industrial Commission (Commission) rating a claimant's permanent physical impairment and disability beyond impairment. The issues on appeal are whether the Commission's findings of fact are supported by substantial and competent evidence, whether the Commission applied the correct test for total permanent disability and whether the Commission erred by referring to the American Medical Association (AMA) guidelines. We find that substantial and competent evidence supports the Commission's findings, the Commission correctly applied the test for total permanent disability and the Commission did not err by referring to the AMA guidelines. Accordingly, we affirm the order of the Commission.

## I.

### BACKGROUND

Stan Pomerinke was injured on February 23, 1988, while working as a truck driver for Excel Trucking and Transport, Inc. (Excel). Pomerinke was pulling a tarp over the load in his truck when he slipped and fell approximately thirteen feet onto the blacktop, landing upright on the soles of his feet. He then drove his truck to the Bonner General Hospital in Sandpoint where x-rays of his back were taken. The treating physician, Dr. Robert E. Rust, Jr., noted the x-rays revealed a "slight loss of vertebral body height at C5," "straightening in the L spine" and "minimal degenerative changes in the lower T spine." Dr. Rust found "no evidence of a compression fracture."

Dr. Rust took additional x-rays on February 29, 1988. These x-rays revealed a slight compression at C5, a ten percent loss of vertebral body height and minimal foraminal narrowing at C3-4. A CT scan of the cervical spine, performed by Dr. Rust on March 2, 1988, revealed a small disc protrusion at C4-5.

Dr. Rust referred Pomerinke to Dr. Ernest C. Fokes, Jr., a Coeur d'Alene neurosurgeon. Dr. Fokes examined Pomerinke on March 11, 1988, at which time Pomerinke complained of neck pain and discomfort around his left shoulder. Dr. Fokes diagnosed a cervical sprain.

On March 25, 1988, Dr. Rust noted that a chronic cervical sprain prevented Pomerinke from working as a truck driver. On April 26, 1988, Dr. Rust cleared Pomerinke to return to driving truck without any heavy lifting. Pomerinke attempted to return to work but on May 23, 1988, he left work because of pain and increasing weakness in his left arm. In a May 27, 1988, letter to Excel's surety, Liberty Northwest Insurance Corporation (Surety), Dr. Rust indicated he had removed Pomerinke from work status and was referring him to Dr. Fokes for further consultation.

On August 8, 1988, Pomerinke began treatment with Dr. John Demakas, a neurosurgeon in Spokane, Washington. Dr. Demakas ordered an MRI which revealed a significant disc disruption and herniation at C3-4 and a bulge at the C4-5 level. Dr. Demakas performed an anterior cervical discectomy with fusion at C3-4 and C4-5 on October 20, 1988. Following surgery, Pomerinke continued to complain of pain and his left arm going to sleep.

Pomerinke underwent a second surgery on May 10, 1989, for thoracic outlet syndrome. This surgery, performed by Dr. Richard Kleaveland, improved Pomerinke's left arm and hand condition.

On June 6, 1989, Dr. Demakas authorized Pomerinke to return to work as a truck driver. Pomerinke returned to work but only worked through June 15, 1989. On August 1, 1989, Pomerinke was examined by a medical panel consisting of Dr. R.D. Luther, an orthopedist, and Dr. H.G. Copsey, a neurologist. The panel concluded:

> [Pomerinke's] condition is stationary at this time and he should be closed. No further treatment other than instructions in rehab[ilitation] exercises is recommended. He should be in some other occupation. His impairment rating is Category 3 of the cervical spine to include his thoracic outlet syndrome.

Pomerinke returned to Dr. Demakas in November of 1989, for further testing and treatment. Dr. Demakas diagnosed Pomerinke as suffering from chronic pain syndrome and referred him to Dr. Merle Janes, a psychiatrist in Spokane. Dr. Janes examined Pomerinke on February 26, 1990, and recommended physical therapy and different medications to improve flexibility.

A second medical panel examination was performed on May 16, 1990, by Dr. Copsey and Dr. J.B. Watkins, an orthopedist in Spokane. The panel confirmed the conclusions of the first panel and found that Pomerinke's condition was stable. The panel concluded that no further treatment was necessary, Pomerinke should be in an occupation other than heavy duty truck driving and the claim should be closed. The panel also reiterated the first panel's impairment rating of "Category III or 20% of the whole man." The panel's impair-

ment rating of twenty percent was paid in full by the Surety.

Pomerinke continued to consult Drs. Demakas and Fokes following the second panel evaluation. On August 23, 1990, a third independent medical evaluation was conducted by Dr. J.S. Blaisdell, an orthopedic surgeon in Sandpoint. Dr. Blaisdell concluded it was highly probable that Pomerinke's condition was permanent and stationary. He opined that Pomerinke could not continue his present occupation as a truck driver and further treatment would not likely improve Pomerinke's condition. Dr. Blaisdell formulated an impairment rating of twenty-seven percent[1] of the whole person calculated as follows:

> I have determined that there is a 10% impairment of the whole person as a result of restricted motion in the cervical spine. He has disc disease at the C3–C4 level of the cervical spine and a similar condition at the C4–C5 level for which an allowance of 5% is made for each. His lifestyle has been seriously affected by this injury for which I suggest a 5% impairment. Pain, both at rest and worse during exertion, accounts for another 5%. When these values are combined, the result is a 27% impairment of the whole person.

On October 15, 1990, Pomerinke was examined by Dr. Dennis Goldberg of Hayden Lake, Idaho. Dr. Goldberg practices industrial and occupational medicine but is not board certified in any medical specialty. Dr. Goldberg opined that Pomerinke's permanent physical impairment rating amounted to thirty-two and one-half percent calculated as follows:

> Permanent Partial Impairment for cervical spine sprain, two level discogenic disease, post operative, 10 percent whole man. Permanent Partial Impairment for cervical spine lack of mobility is rated at 10%. Permanent Partial Impairment for significant life style change should be considered as 5%. An allowance for pain is 7.5% percent whole man. This is based

on the fact that [Pomerinke] will require ever increasing dosages of analgesic medication, contributes to his depression and arises without notice. Therefore I would rate [Pomerinke] at 32.5 percent whole man from a physical point of view.

## II.

## FINDINGS OF THE INDUSTRIAL COMMISSION

Based on the foregoing, the Commission found that Pomerinke had met his burden of proving his February 23, 1988 industrial accident arose out of the course and scope of his employment with Excel. The Commission also made the following findings: (1) The independent medical panel's May 16, 1990 award of a permanent physical impairment rating amounting to twenty percent of the whole person is appropriate and benefits associated with that rating have been paid in full; (2) Pomerinke failed to make a prima facie showing that he made an adequate search for other employment and that there is no suitable occupation available to him. Thus, he is not totally and permanently disabled by reason of being "odd-lot"; and (3) Pomerinke is entitled to an award of disability beyond impairment amounting to three and one-half percent of the whole person because of non-medical factors set forth in I.C. § 72–430.

On appeal, Pomerinke argues the Commission's findings of fact are not supported by substantial and competent evidence, the Commission applied the wrong test for total permanent disability and the Commission committed reversible error by referring to AMA guidelines.

## III.

## THE COMMISSION'S MATERIAL FINDINGS OF FACT ARE SUPPORTED BY SUBSTANTIAL AND COMPETENT EVIDENCE

■ Pomerinke challenges a number of the Commission's findings of fact. We will

---

1. The impairment rating of Dr. Blaisdell actually calculates to thirty percent of the whole person.

not address each of these disputed findings since many are inconsequential in that they have no bearing on the Commission's ultimate conclusions of law. With respect to the disputed findings of fact which are material, we focus on whether substantial and competent evidence supports the Commission's findings. I.C. § 72–732. In assessing whether an order of the Commission should be set aside because it is not supported by substantial and competent evidence, we do not try the matter anew by weighing the evidence and acting akin to a trial court. *Monroe v. Chuck & Del's, Inc.*, 123 Idaho 627, 629–630, 851 P.2d 341, 343–44 (1993). Nor are we concerned with whether this Court would have reached the same conclusion based upon the evidence presented. *Id.* Instead, our inquiry into the sufficiency of the Commission's factual findings is limited to whether the findings are supported by any substantial and competent evidence. Idaho Const. art. 5, § 9; I.C. § 72–732.

■ Pomerinke challenges the finding by the Commission that he is entitled to a permanent physical impairment rating amounting to twenty percent of the whole person. This rating was formulated by two separate medical panels. Thus, substantial and competent evidence supports this finding. While Drs. Goldberg and Blaisdell formulated higher impairment ratings, this Court will defer to the Commission's findings as to the credibility of conflicting medical experts. *Ross v. Tupperware Mfg. Co./Premark*, 122 Idaho 641, 643, 837 P.2d 316, 318 (1992).

Pomerinke also argues that there is not substantial and competent evidence to support the Commission's finding that pain was a component of the medical panel's impairment rating. Although it is not clear from Pomerinke's brief, the apparent point of this argument is that pain should have been included as a non-medical factor in the Commission's award of disability beyond impairment pursuant to I.C. §§ 72–425, –430.

The Commission determined the May 16, 1990 panel's impairment rating of twenty percent is "appropriate" and then concluded: "[t]he reports of both medical panels clearly took into account [Pomerinke]'s past complaints of pain, as well as complaints of pain which arose in the course of the physical examinations which the panel members conducted" and therefore "it is not reasonable to assume [the panels] failed to take pain into account" "merely because the panels did not specifically designate a portion of the impairment rating as based solely on pain...."

■ Substantial and competent evidence supports the Commission's conclusion that pain was a component of the May 16, 1990 medical panel's impairment rating. The panel concluded that Pomerinke's "impairment rating is still recommended as Category III or 20% of the whole man to include the surgery on the cervical spine and the thoracic outlet surgery with scalenotomy and first rib resection on the left." While the foregoing impairment rating did not specify that pain is a component of the rating, the panel report is replete with references to pain. For example, the panel noted, the slightest traction or compression on the neck caused pain and that Pomerinke "cannot even drive his car at this time without worsening his right neck and shoulder pain." In addition, the panel report summarizes Pomerinke's medical history which includes repeated complaints of pain and references to pain. The report also lists Pomerinke's "Chief Complaints" which mostly include complaints of pain and discomfort. Based on the foregoing, we find that there is substantial and competent evidence to support the Commission's findings that pain was a component of the May 16, 1990 panel's twenty percent impairment rating.

## IV.

### THE COMMISSION APPLIED THE PROPER TEST FOR PRIMA FACIE EVIDENCE OF TOTAL PERMANENT DISABILITY

■ Pomerinke argues the Commission incorrectly applied the three prong test for prima facie evidence of total permanent disability set forth in *Huerta v.*

*School Dist. No. 431*, 116 Idaho 43, 773 P.2d 1130 (1989). Pomerinke contends that an injured claimant may prove that suitable employment is unavailable by proving one of the three prongs of the *Huerta* test: (1) the claimant attempted work that he was [in]capable of performing; (2) the claimant searched for other work and it was unavailable; or (3) the claimant does not have to search for other employment because the claimant's efforts would be futile. *Huerta*, 116 Idaho at 49, 773 P.2d at 1136. Pomerinke argues that the Commission required him to prove *each* prong of the *Huerta* test.

The above test to which Pomerinke refers is gleaned from the text of *Huerta* which reads as follows:

> In establishing a prima facie case as an odd-lot worker, it was Huerta's burden to prove the unavailability of suitable work. Huerta could have carried this burden by showing that he had attempted other work that he was capable of performing, or that he had searched for other work, and it was not available. It would have been sufficient for Huerta to have proved that he had used vocational counselors, employment agencies, or the Job Service to conduct searches for other employment. However, we leave to the Commission the weighing of the evidence produced by the claimant. We will not participate in weighing the evidence concerning the availability of employment, except to apply the substantial competent evidence rule.
>
> We have also held that a claimant may be relieved of the burden of proof required in *Gordon* [2], if his efforts to find suitable employment would have been futile.

116 Idaho at 49, 773 P.2d at 1136.

The Commission correctly applied *Huerta* in a manner consistent with that suggested by Pomerinke. In its findings of fact, the Commission held:

As [Pomerinke] argues, *Huerta* stands for the proposition that the Claimant must do more than assert that he cannot perform his previous type of employment, and that in doing so, he may prove that suitable work is unavailable to him by *one of three methods*, including showing what other types of employment he has attempted; *or*, showing that vocational counselors, employment agencies, or the Job Service has searched for other work on his behalf and that such work was not available; *or* that the efforts of the employee to find suitable employment would have been futile.

(Emphasis added). The Commission then found that Pomerinke proved *none* of the above methods. We do not find any error in the Commission's interpretation and application of *Huerta*. Moreover, we find that substantial and competent evidence supports the Commission's finding that Pomerinke failed to make a prima facie showing that suitable work was unavailable.

**V.**

## THE COMMISSION'S REFERENCE TO THE AMA GUIDELINES WAS NOT ERROR

Pomerinke argues that the Commission referred to the AMA Guides to the Evaluation of Permanent Impairment (3d ed. 1990) for the definition of pain and impairment. Pomerinke alleges that the Commission's reference to the AMA Guides without its inclusion in the record and without advance notice to the parties constitutes reversible error.

In *Hite v. Kulhenak Bldg. Contractor*, 96 Idaho 70, 524 P.2d 531 (1974), the Court considered the propriety of the Commission's reference to the AMA Guides. In *Hite*, the employer's expert testified on the issue of the claimant's disability and based this testimony solely on information taken from the AMA Guides to Evaluation of Permanent Impairment. The Court upheld the Commission's admission of information

---

**2.** *Gordon v. West*, 103 Idaho 100, 104, 645 P.2d 334, 338 (1982), held that the claimant bears the burden of establishing a prima facie case that the claimant is in the odd-lot category. In other words, the claimant bears the burden of proving the unavailability of suitable work in attempting to establish total disability. *Id.*

taken from the AMA Guides but narrowly limited the circumstance under which such evidence may be admitted:

> The legislature therefore must have intended that the Commission should have the discretionary power to consider any type of reliable, trustworthy evidence having probative value in the area of disability rating, even though that evidence may not be admissible in a court of law. . . .

> The guides in question were prepared by committees of experts in the field of disability compensation. None of those experts had any interest in the outcome of this case. The guides are recognized authority in the area of disability rating. They are, in short, trustworthy and reliable. Of course, it will still be necessary to introduce the evidence through witnesses who must be able to testify that they are recognized authority. By our decision today, we are not holding that the Industrial Commission can take notice of anything it desires. Only, that recognized treatises or works dealing with topics in which the Commission possesses expertise may be admitted into evidence through witnesses to be used as substantive evidence.

96 Idaho at 72, 524 P.2d at 533. In *Hagler v. Micron Technology, Inc.*, 118 Idaho 596, 798 P.2d 55 (1990), the dissenting author quoted the above excerpt from *Hite* and noted the narrow use which may be made of treatises, such as the AMA guides, before a Commission proceeding.

> The foregoing excerpt points out the narrow use which may be made of medical treatises and expressly delineates the circumstances under which evidence may be admitted. First, an expert witness must testify that the book or treatise in question is a recognized authority. Second, the treatise must be trustworthy and reliable. Third, the treatise must deal with an area in which the Commission has expertise, *i.e.*, disability ratings. Finally, it is within the discretion of the Commission to allow such evidence in.

> In this case the record reflects that none of these requirements were met.

118 Idaho at 601, 798 P.2d at 60 (Bakes, C.J., concurring in result and dissenting in part).

In a divided opinion, the Court in *Hagler* held that given the informal nature of Industrial Commission proceedings, it was error, albeit harmless, for the Commission to strike the testimony of the claimant's daughter who attempted to introduce various passages from a medical treatise. 118 Idaho at 598–99, 798 P.2d at 57–58 (Bistline and McDevitt, JJ., concur; Boyle, J., concurs in the result; Bakes, C.J., concurs in result and dissents in part; Johnson, J., concurs with Bakes, C.J.). The Court also held it was harmless error for the Commission not to admit the treatise itself into evidence.

■ While the above cases make it somewhat unclear as to whether the Commission may use the AMA Guides on its own motion and without expert testimony to support them, the Commission in the present case cited the AMA Guides merely in support of its supposition that the medical panels included pain in their impairment ratings. There is nothing in the Commission's findings or order which indicate it relied on the AMA Guides in assessing Pomerinke's condition or formulating its own impairment rating. Instead, the Commission adopted the rating of the independent medical panels and indicated that "[o]n the medical record presented, the Referee concludes that the independent medical panels took pain into account, and considered real limitations imposed by pain upon the Claimant's activities." Given the limited purpose for which the Commission consulted the AMA Guides, we find no error.

## VI.

## CONCLUSION

The Commission's order rating Pomerinke's permanent physical impairment and disability beyond impairment is affirmed.

We award costs to Excel.

McDEVITT, C.J., and BISTLINE, JOHNSON and SILAK, JJ., concur.