997 P.2d 586

**Estanislao VARGAS, Plaintiff–Appellant,**

v.

**KEEGAN, INC. and Liberty Northwest Insurance Corporation, Defendants–Respondents.**

No. 25080.

Supreme Court of Idaho,
Twin Falls, November 1999 Term.

Feb. 28, 2000.

Rehearing Denied April 26, 2000.

L. Clyel Berry, Twin Falls, for appellant.

Kent W. Day, Boise, for respondent.

SCHROEDER, Justice.

Estanislao Vargas (Vargas) appeals the findings of the Industrial Commission in a worker's compensation case.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Vargas was born in Mexico in 1949 and attended school there through the sixth grade. He could not continue with school because there were no schools in his town beyond the primary level. Vargas served in the military from about age 17 to age 20, where he learned to care for horses. Subsequently, he worked on farms in Mexico before he moved to Mexico City, where he packed boxes in a soap factory for two years. He came to the United States in 1984 and worked in California as a fruit-picker. He alternated between the United States and Mexico, working primarily in the fields, hoeing and doing seasonal work.

During the early 1990s, Vargas worked in Idaho, cleaning beets, harvesting potatoes, packaging corn and later, cheese. He began work at Keegan's potato processing plant in December of 1995, packing potatoes in bags of five to ten pounds which he then stacked. He also cleaned the area where the potatoes were unloaded. He worked approximately 40 hours a week for $5.50 a hour.

On March 8, 1996, Vargas was cleaning underneath a conveyor belt. When he straightened up, he struck the back of his neck against the metal on the conveyor belt. The accident occurred on Friday afternoon, and Vargas spent the weekend trying to heal. He returned to work Monday, but the pain increased after he began working. He was seen by a doctor for the first time on March 13, 1996, and was seen by other physicians afterwards. Vargas suffered from a C6–7 disc herniation with resultant nerve damage. The surety accepted Vargas's claim for compensation and began paying his medical expenses and temporary total disability benefits effective March 22, 1996. Vargas began a four-week course of physical therapy in September of 1996, and on November 4, 1996, he underwent surgery for the injuries to his spine. Dr. Mitgang performed the surgery.

The temporary total disability benefits were terminated on March 16, 1997, and Vargas returned to work on March 17, 1997. However, he did not return to his old position. Instead, he worked as a potato sorter where he could sit or stand at his work station, work at his own speed and take a break whenever necessary. Despite this less stressful position, he experienced pain and dizziness at work. He was taking prescription medication for pain at the time, but often did not work the entire shift for which he

was scheduled. He terminated his employment on May 5, 1997, because he could not endure the pain. He has had little success seeking employment since that time.

Vargas made a claim for worker's compensation benefits with the Industrial Commission, and a hearing was held before a referee. The Commission adopted the findings and conclusions proposed by the referee. Vargas appeals the decisions of the Commission determining that he was not entitled to temporary disability benefits from May 7, 1997, through June 24, 1997, and that he was only entitled to permanent partial disability of thirty-five percent of the whole person. He asserts that he was entitled to total and permanent disability benefits, maintaining that the Commission failed to consider his chronic pain syndrome in its determination of permanent impairment or permanent disability in excess of impairment. He also claims that the Commission erred in failing to address whether he is entitled to permanent partial impairment benefits retroactive to the date he reached maximum medical impairment. Additionally, he maintains he is entitled to attorney fees for the proceedings before the Commission and before this Court.

## II.

### STANDARD OF REVIEW

■ The standard of review for appeals from the Industrial Commission is two-fold. While this Court will exercise free review over the Commission's legal conclusions, it will not disturb the Commission's factual findings if they are supported by substantial and competent evidence. *Reiher v. American Fine Foods*, 126 Idaho 58, 60, 878 P.2d 757, 759 (1994) (citations omitted). Substantial and competent evidence consists of such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Idaho State Ins. Fund v. Hunnicutt*, 110 Idaho 257, 260, 715 P.2d 927 (1985). The substantial evidence rule requires a court to determine whether the agency's findings of fact are reasonable. *Idaho State Ins. Fund v. Hunnicutt*, 110 Idaho 257, 260, 715 P.2d 927, 930 (1985) (citing *Local 1494 of the International Association of Firefighters v. City of Coeur d'Alene*, 99 Idaho 630, 586 P.2d 1346

(1978)). In deciding whether the agency's findings of fact were reasonable, reviewing courts should not read only one side of the case and, if they find any evidence there, sustain the administrative action and ignore the record to the contrary. *Idaho State Ins. Fund v. Hunnicutt*, 110 Idaho 257, 260, 715 P.2d 927, 930 (1985) (citing *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456, 461 (1951)).

## III.

### THE COMMISSION'S DETERMINATION THAT VARGAS WAS NOT ENTITLED TO TEMPORARY DISABILITY BENEFITS FROM MAY 7, 1997, THROUGH JUNE 24, 1997, IS SUPPORTED BY SUBSTANTIAL, COMPETENT EVIDENCE.

■ The question before the Court is whether a reasonable mind could accept the Commission's findings as adequate to support the conclusion that Vargas was not entitled to temporary disability benefits for the time period beginning May 7, 1997, and ending June 24, 1997. The relevant findings by the Commission are: (1) Dr. Mitgang had released Vargas to work on March 17, 1997, and (2) there was no medical evidence that he could not work for the time period in question. There are facts that weigh against the Commission's findings: Vargas was taking prescription pain medication, and the medication could make the job as potato grader dangerous. Vargas said that his pain was unbearable. The Commission considered all of the evidence and accepted the evidence that Vargas was released to work without medical restrictions that would prevent him from doing his job. Though there was conflicting evidence, there was substantial and competent evidence to support the Commission's findings.

## IV.

### THE COMMISSION DID NOT ERR IN ITS DETERMINATION OF PERMANENT IMPAIRMENT OR PERMANENT DISABILITY IN EXCESS OF IMPAIRMENT.

■ The ultimate finding in determining impairment rests with the Commission.

Physicians' opinions are advisory only. *Urry v. Walker and Fox Masonry Cont.*, 115 Idaho 750, 769 P.2d 1122 (1989).

Vargas claims that the Commission ignored his diagnosis of chronic pain syndrome, as well as his testimony that he walks slowly, has difficulty bathing and cannot lace his shoes. According to Vargas, such interference in daily activities constitutes permanent impairment pursuant to I.C. § 72–424 and permanent disability pursuant to I.C. § 72–425.

§ 72–424. **Permanent impairment evaluation.** —— "Evaluation (rating) of permanent impairment" is a medical appraisal of the nature and extent of the injury or disease as it affects an injured employee's personal efficiency in the activities of daily living, such as self-care, communication, normal living postures, ambulation, elevation, traveling, and nonspecialized activities of bodily members.

§ 72–425. **Permanent disability evaluation.** —— "Evaluation (rating) of permanent disability" is an appraisal of the injured employee's present and probable future ability to engage in gainful activity as it is affected by the medical factor of permanent impairment and by pertinent nonmedical factors as provided in section 72–430.

§ 72–430 **Permanent disability** —— **Determination of** —— **Percentages** —— **Schedule.** —— (1) Matters to be considered. In determining percentages of permanent disabilities, account shall be taken of the nature of the physical disablement . . . consideration being given to the diminished ability of the afflicted employee to compete in an open labor market within a reasonable geographical area considering all the personal and economic circumstances of the employee and other factors as the commission may deem relevant . . .

■ The referee made references to Vargas' pain and prescriptions for pain medications in his findings of fact and mentioned Dr. Phillips' diagnosis of chronic pain syndrome. The referee did not refer to Vargas' pain or the diagnosis of chronic pain syndrome in the permanent impairment or permanent disability assessments.

The claimant in *Pomerinke v. Excel Trucking Transport, Inc.*, 124 Idaho 301, 859 P.2d 337 (1993), was diagnosed with chronic pain syndrome as well. In that case, the Court upheld the Commission's impairment rating, which relied upon the findings of a medical panel. The findings of the medical panel did not specify that pain was a component in its impairment rating, but the Commission discussed its belief that the medical panel nevertheless took account of the claimant's past complaints of pain. 124 Idaho at 305, 859 P.2d at 341. The Court noted that while the medical panel's impairment rating "did not specify that pain is a component of the rating, the panel report is replete with references to pain." *Id.* This met the substantial and competent evidence standard.

The referee's findings of fact, which were adopted by the Commission, acknowledged Vargas' pain. The references to pain are sufficient to demonstrate that the Commission considered this element in making its decision.

### V.

### THERE IS SUBSTANTIAL, COMPETENT EVIDENCE TO SUPPORT THE COMMISSION'S DETERMINATION THAT VARGAS FAILED TO ESTABLISH ENTITLEMENT TO TOTAL AND PERMANENT DISABILITY BENEFITS.

■ Vargas relies on the statutory definition of disability as a decrease in wage-earning capacity due to injury or occupational disease, as such capacity is affected by the medical factor of physical impairment, and by pertinent nonmedical factors. I.C. § 72–102(10). He asserts that he is permanently disabled due to his chronic pain syndrome, arguing that chronic pain makes him unable to compete for any available job within the open labor market because it restricts the types of activities in which he can engage.

■ Vargas argues that he is entitled to "odd lot" status. A prima facie case for odd lot status is made when an employee (1) shows what other types of employment the employee has attempted, (2) shows that the

employee or vocational counselors, employment agencies or job service upon behalf of the employee, have searched for other work and other work is not available or (3) shows that any efforts to find suitable employment would be futile. *Dumaw v. J.L. Norton Logging,* 118 Idaho 150, 795 P.2d 312 (1990).

Some evidence supports Vargas' claim that he is unemployable. However, the Commission's finding that Vargas is employable is supported by medical evidence and the testimony of a vocational counselor. This evidence constitutes substantial, competent evidence.

## VI.

## THERE IS SUBSTANTIAL, COMPETENT EVIDENCE TO SUPPORT THE COMMISSION' S DETERMINATION THAT VARGAS WAS ONLY ENTITLED TO PERMANENT PARTIAL DISABILITY OF THIRTY-FIVE PERCENT OF THE WHOLE PERSON.

The Commission relied on the disability report prepared by Ms. Barros–Bailey (an employment counselor) in finding that Vargas was entitled to a thirty-five percent permanent partial disability rating. Vargas claims that the Commission relied too heavily on the methodology used by Barros–Bailey in reaching a permanent partial disability rating and that her methodology is not in accord with existing legal principles. Vargas argues that the method used by Barros–Bailey does not take account of his limitations and that the Commission failed to provide a sufficient rationale for its rating, as required by *Edwards v. Harold L. Harris Const.,* 124 Idaho 59, 856 P.2d 96 (1993).

Barros–Bailey did not make a recommendation regarding the percentage rating. She merely provided percentages based on different doctors' opinions. The argument that the Commission relied too much on her recommendations is not persuasive in light of the fact that she did not make any recommendations.

Apart from the question of Barros–Bailey's methodology, there is a question whether the referee's rationale, which was accepted by the Commission, is adequately set forth, such that the Court may review the Commission's conclusions. The relevant portions of the findings are set forth:

> Barros–Bailey found Claimant suffered a loss of wage-earning capacity and a loss of job market access, and that his capacity to engage in gainful activity had been reduced. In reaching her conclusion, she used the physical restrictions imposed on Claimant by all three physicians and researched the Twin Falls job market. After reviewing her credible report and testimony, the methodologies she used in reaching her conclusions, and her reliance on the medical evidence in the record, and considering Claimant's age, educational level, past work experience, and language skills, the Referee concludes Claimant is entitled to a permanent partial disability (PPD) of thirty-five percent inclusive of his permanent impairment. In reaching this conclusion, the Referee, having observed Claimant, notes the major limiting factors in his ability to engage in gainful activity are the lifting and body motion restrictions imposed on him. These restrictions effectively limit Claimant's ability to work in sedentary and light jobs paying minimum wage. He cannot return to field work.

The Commission's rationale is sufficiently set forth to permit review by this Court.

## VII.

## THE COMMISSION DID NOT ERR IN FAILING TO ADDRESS WHETHER VARGAS IS ENTITLED TO PERMANENT PARTIAL IMPAIRMENT BENEFITS RETROACTIVE TO THE DATE VARGAS REACHED MAXIMUM MEDICAL IMPROVEMENT.

Vargas reached maximum medical improvement on June 24, 1997, according to Dr. Mitgang's assessment. The surety began payment of periodic impairment benefits beginning on December 17, 1997.

Vargas argues that the permanent partial impairment benefits should date back to June 24, 1997, and that the Commission erred in failing to address this issue. However, the Commission accepted the referee's finding that "[t]he PPI rating is effective

June 25, 1997." Vargas asks the Court to do what the Commission has already done; namely, fix a date for the accrual of PPI benefits. Although the benefits began to accrue in June 1997, the surety did not receive an impairment rating from a physician until December 1997. At that time, the surety paid out a lump sum of $3,000 in December.

■ The Commission determined that the surety acted reasonably in only paying $3,000. There is little basis to challenge the Commission's finding that the surety acted reasonably given the fact that (1) the surety could not have paid the benefits in June of 1997, as it did not have the necessary impairment rating, (2) the surety paid $3,000 very soon after it was provided with an impairment rating, and (3) the surety continues to make payments on this debt.

## VIII.

### THE COMMISSION DID NOT ERR IN DENYING VARGAS ATTORNEY FEES PURSUANT TO I.C. § 72–804.

■ Vargas presents two incidences of the surety's "unreasonableness" as evidence that he should be awarded attorneys' fees. First, he argues that the surety unreasonably refused to pay temporary partial disability benefits which were due in the amount of $243.22. The surety only paid $51.00. Second, the surety did not pay the permanent impairment benefits beginning on June 24, 1997, although the benefits accrued on that date. The surety only began payment on those benefits in December of 1997.

The relevant statute provides:

§ 72–804. Attorney's fees — Punitive costs in certain cases.—If the commission or any court before whom any proceedings are brought under this law determines that the employer or his surety contested a claim for compensation made by an injured employee or dependent of a deceased employee without reasonable ground, or that an employer or his surety neglected or refused within a reasonable time after receipt of a written claim for compensation to pay to the injured employee or his dependents the compensation provided by law, or without reasonable grounds discontinued payment of compensation as provided by law justly due and owing to the employee or his dependents, the employer shall pay reasonable attorney fees in addition to the compensation provided by this law. In all such cases the fees of attorneys employed by injured employees or their dependents shall be fixed by the commission.

The surety has made payment on the temporary partial disability benefits and intends to continue payment. There is no error demonstrated in the Commission's finding that the surety acted reasonably with regard to the $243.22 debt.

The Commission determined that the surety acted reasonably in the payment of the permanent impairment benefits. That decision is supported by the record, as discussed in section VII.

Vargas is not entitled to attorney fees before the Commission or on appeal.

## IX.

### CONCLUSION

The decision of the Commission is affirmed. The respondent is awarded costs. No attorney fees are allowed.

Chief Justice TROUT and Justices SILAK, WALTERS, and KIDWELL, concur.