## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 34626-2007

| | | |
|---|---|---|
| CHET DAVIDSON, | ) | |
| | ) | **Coeur d'Alene, April 2009 Term** |
| Claimant-Appellant, | ) | |
| | ) | **2009 Opinion No. 72** |
| v. | ) | |
| | ) | **Filed: May 29, 2009** |
| RIVERLAND EXCAVATING, INC., | ) | |
| Employer; STATE INSURANCE FUND, | ) | **Stephen W. Kenyon, Clerk** |
| Surety; and STATE OF IDAHO, | ) | |
| INDUSTRIAL SPECIAL INDEMNITY | ) | |
| FUND, | ) | |
| | ) | |
| Defendants-Respondents. | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The order of the Industrial Commission is <u>affirmed</u>.

Michael J. Verbillis, Coeur d'Alene, for appellant.

H. James Magnuson, Coeur d'Alene, for respondents Employer and Surety.

Jones, Brower & Callery, P.L.L.C., Lewiston, for respondent Industrial Special Indemnity Fund. Thomas W. Callery argued.

---

EISMANN, Chief Justice.

This is an appeal from the order of the Industrial Commission challenging the claimant's permanent impairment rating, the manner in which the Commission determined that he did not have disability in excess of impairment, the failure to award the claimant attorney fees, and the failure to retain jurisdiction. We affirm the order of the industrial commission.

### I. FACTS AND PROCEDURAL HISTORY

In July 1999, Chet Davidson (Claimant) was employed by Riverland Excavating, Inc., (Employer) as a heavy equipment operator and mechanic helper. In November 1999, Claimant was assisting a mechanic working on a loader. The mechanic was called away, and Claimant

attempted to reassemble the cab of the loader by himself. As he lifted the seat overhead to put it in the cab, the seat slipped from his hands and hit his head, bending his neck and knocking him to the ground. Claimant finished his work that day and continued working until December 30, 1999, when Employer shut down for the winter. Claimant reported his injury several days later and was referred to an immediate care facility. Eventually he was referred to a physician who saw him on February 4, 2000. That physician became his treating physician for this industrial accident.

Claimant's treating physician ordered x-rays and an MRI. Based upon the results of that imaging and his examination of Claimant, the physician diagnosed a disc herniation at C6-7, neural foraminal narrowing at C5-6, and a severe kyphosis at C5-6. He recommended a three-level anterior cervical discectomy and fusion at C4-5 and C6-7 with internal fixation. Surgery was scheduled and then cancelled because the State Insurance Fund (Surety) denied Claimant's claim. In March 2000, Surety reversed its denial.

Claimant had significant prior injuries. In the early 1970's, he suffered a lower back injury in a motor vehicle accident which ultimately required a spinal fusion. He competed in the rodeo circuit, and approximately two years later a bucking horse fell on him, reinjuring his lower back which necessitated a second surgery. In the mid-1970's, he had his kneecap torn off and splintered a bone in his left leg when a bull he was preparing to ride acted up while still in the metal chute. In 1976, while operating a scraper to make a road to a mine, he was thrown from the scraper and reinjured his lower back, requiring a third low back surgery. In the mid-1980's, he injured his right knee in a logging accident, which injury required surgery on his knee. During his years of competition on the rodeo circuit, he also suffered multiple shoulder separations and sustained fractures to his cheekbones, nose, jaw, wrist, foot, and shin.

In 1988, Claimant injured his neck while employed in the state of Washington. As result of that injury, he underwent an anterior cervical discectomy at C5-6 in March 1990. He had on-going pain complaints after the surgery and contended that he could not return to work. He was diagnosed with chronic pain syndrome and referred to a pain clinic, but he was uncooperative and left the clinic within a few days. He was offered vocational assistance, but insisted that he was unemployable and just wanted a settlement. He initially received a whole-person impairment rating of 10% for his cervical injury and 25% for mental impairment. He later attempted to reopen the proceeding, and it was ultimately settled by awarding him additional

2

impairment for the cervical injury so that his cervical impairment totaled 25% of the whole person.

Surety retained a neurologist and an orthopedic surgeon to conduct an independent medical evaluation (IME) of Claimant, which was done on June 29, 2000. Both physicians submitted written reports. The neurologist stated that it was difficult to ascertain what injury Claimant sustained as a result of his 1999 accident. She stated that Claimant's condition was only partly due to the 1999 injury because of his prior discectomy and significant, pre-existing degenerative changes. She reported that Claimant's medical records revealed that he had significant pain behavior with apparent symptom magnification after the discectomy, but he implied to her that the surgery had an excellent outcome and he was thereafter asymptomatic. She expressed doubt as to whether further curative measures would be successful, but recommended further studies to identify whether Claimant had objective findings of a treatable condition.

The orthopedic surgeon did not examine Claimant because he wanted an audio recording of the examination and the surgeon required that any recording be by video. He reviewed Claimant's medical records and agreed that further studies should be done.

On August 7, 2000, nerve conduction studies were performed on Claimant, and they were entirely normal. Based upon those results, the neurologist and orthopedic surgeon recommended against performing surgery upon claimant because they thought it would be unlikely to alleviate his complaints. The reasons given were: (a) the lack of neurologic findings on physical examination or on electrical studies; (b) Claimant's history of significant pain behavior and symptom magnification; (c) inconsistencies between Claimant's statements and the medical records; (d) his three-pack-per-day smoking habit; and (e) the rather marginal success of three-level cervical fusions. They concluded that Claimant was medically stable and rated his impairment at 5% of the whole person based upon the aggravation of his pre-existing degenerative cervical condition.

In March 2001, Surety authorized the three-level fusion recommended by Claimant's treating physician. The surgery was scheduled, but because Claimant was incarcerated it was rescheduled to August 15, 2001. After the surgery, Claimant continued to complain of neck pain and loss of range of motion and insisted that he was unable to return to work. His treating

3

physician ordered a CT scan, which did not show any evidence of neural element compression and showed the central canal as well as the neural foramina were widely patent at each level.

On June 8, 2002, Claimant had a second IME conducted by the neurologist who participated in the first IME and another orthopedic surgeon. At that IME, Claimant reported that his pain was the same as it had been before the surgery. The two physicians opined that Claimant's condition was due solely to the 1999 injury. They rated his impairment at 15% of the whole person and stated that Claimant could do light to medium work with a lifting restriction of 25 to 30 pounds on a regular basis. After reviewing the IME report, Claimant's treating physician agreed with the 15% whole person impairment rating but disagreed with the lifting restrictions, stating it should be 20 to 25 pounds. He also cautioned that there was no evidence that Claimant's fusion had been successful.

Claimant's treating physician discovered that the attempted fusion had been unsuccessful, and on July 10, 2003, he performed a revision of the prior C6-7 fusion. By September, Claimant's left upper extremity pain had improved, but he was experiencing pain in the right upper extremity and still had neck pain. He also developed a drooping right eyelid and small pupil on the right side, which his treating physician diagnosed as Horner's syndrome. He ordered an MRI, which ruled out an anatomic or pathological basis for the Horner's syndrome.

Claimant's pain symptoms continued. After the one-year follow-up examination on July 23, 2004, his treating physician determined that the second fusion had failed. On February 23, 2005, he performed a third fusion at C6-7 on Claimant. By August 2005, Claimant admitted to clear improvement in his condition, but he was still experiencing interscapular pain and stinging with some numbness and tingling in his upper extremities, bilaterally. Claimant's treating physician determined he was medically stable as of October 31, 2005, but he did not release Claimant to work at that time.

On January 6, 2006, Claimant had a third IME conducted by the neurosurgeon in Washington who had performed the discectomy on Claimant in 1990. He suggested that Claimant participate in a pain management program, but did not at that time rate Claimant's impairment because he was not yet fixed and stable.

On February 17, 2006, Claimant's treating physician saw him for his one-year follow up. He found that Claimant's condition was essentially unchanged since August 2005. He recommended that Claimant participate in a pain management program, but Claimant refused to

4

do so. He also concluded that Claimant's Horner's syndrome was a direct result of his multiple cervical surgeries. X-ray films indicated that the final surgery had resulted in a successful fusion, but he ordered a CT scan to definitely assess whether it was.

The treating physician's chart notes and the results of the CT scan were provided to the neurosurgeon who had performed the 1990 discectomy. After reviewing them, he wrote a letter dated April 12, 2006, expressing his opinions. He agreed that if Claimant would not participate in a pain management program, there was no further curative treatment to offer and Claimant was fixed and stable. In his opinion, Claimant's impairment rating remained unchanged at 15% of the whole person. He further stated that Claimant could perform medium work, but should avoid work that required maintaining his head in a reading position and should be able to move around and change his position freely. He should also have some restrictions on working overhead due to the loss of range of motion in his neck.

On April 24, 2000, Claimant filed his complaint against Employer and Surety. On November 26, 2004, he filed his complaint against the Industrial Special Indemnity Fund. Under Idaho Code § 72-332, it could be liable for benefits if Claimant's injuries combined with his pre-existing permanent physical impairment to render him totally and permanently disabled.

The matter was tried before a referee on November 1, 2006. At the time of the hearing, Claimant was fifty-five years of age. The issues tried were: (a) Claimant's average weekly wage; (b) whether he has a permanent partial impairment from the 1999 accident; (c) whether he has permanent disability in excess of impairment and, if so, whether he is totally disabled; (d) if he is totally disabled, whether the ISIF is liable under Idaho Code § 72-332 and, if so, apportionment under the *Carey* formula; (e) if he is not totally disabled, whether disability should be apportioned under Idaho Code § 72-406; and (f) whether he is entitled to attorney fees under Idaho Code § 72-804. After the hearing, the parties submitted depositions and briefs.

On August 17, 2007, the referee issued written proposed findings of fact and conclusions of law. The referee found that as a result of the 1999 accident, Claimant sustained a combined impairment of 19% of the whole person for his cervical injury and his Horner's syndrome. The referee also found that claimant had failed to prove disability in excess of impairment. Finally, the referee found that Claimant was not entitled to an award of attorney fees. The Industrial Commission (Commission) adopted the referee's findings of fact and conclusions of law. On September 7, 2007, it entered an order that Claimant is entitled to a whole person impairment of

19% for the injuries he sustained in the 1999 industrial accident; that he did not sustain any disability in excess of impairment; that he was not entitled to attorney fees pursuant to Idaho Code § 72-804; and that ISIF was dismissed with prejudice. Claimant then timely appealed.

## II.  ISSUES ON APPEAL

1. Did the Commission fail to consider pain when determining Claimant's impairment?
2. Did the Commission err in failing to apportion disability as set forth in *Page v. McCain Foods, Inc.*, 145 Idaho 302, 179 P.3d 265 (2008)?
3. Is there substantial and competent evidence supporting the Commission's finding that Claimant is not entitled to an award of attorney fees pursuant to Idaho Code § 72-804?
4. Did the Commission err in failing to retain jurisdiction in this matter?
5. Are Employer and Surety entitled to an award of attorney fees on appeal pursuant to Idaho Appellate Rule 11.1?

## III.  ANALYSIS

When this Court reviews a decision of the Industrial Commission, it exercises free review over questions of law, but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. *Gooby v. Lake Shore Mgmt. Co.*, 136 Idaho 79, 29 P.3d 390 (2001). Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. *Id.* Because the Commission is the fact finder, its conclusions on the credibility and weight of the evidence will not be disturbed on appeal unless they are clearly erroneous. *Id.* This Court does not weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented. *Id.* Whether a claimant has an impairment and the degree of permanent disability resulting from an industrial injury are questions of fact. *Id.*

**A.  Did the Commission Fail to Consider Pain when Determining Claimant's Impairment?**

The Commission found that Claimant's impairment arising from the 1999 industrial accident was 19% of the whole person. Claimant acknowledges that a determination of physical impairment is a question of fact for the Commission. He contends that the Commission committed a legal error by failing to consider his pain when determining impairment.

6

In *Urry v. Walker and Fox Masonry Contractors*, 115 Idaho 750, 754, 769 P.2d 1122, 1126 (1989), we held that pain is a factor that must be taken into account when determining impairment. In the present case, the Commission did take into account Claimant's pain complaints. It simply did not believe that the pain was as severe as Claimant contended.

Throughout its findings, the Commission noted Claimant's complaints of ongoing pain. It also noted, however, the statements by three of the physicians who conducted IME's of Claimant that the medical records documented symptom magnification by Claimant; that his pain complaints were not supported by objective medical findings; and that there were inconsistencies between his statements and the medical records.

Claimant challenges the opinion of one of the three physicians relied upon by the Commission. That physician is the neurosurgeon in Washington who performed the 1990 discectomy on Claimant. He quotes a portion of the neurosurgeon's deposition testimony in which the neurosurgeon stated that he did not utilize pain as a component of his impairment assessment. The neurosurgeon was later asked whether he would give Claimant a higher impairment rating if he took into consideration Claimant's pain, and the neurosurgeon said he would not because he determined that Claimant's "symptom embellishment was not related to his injury of record" and in his opinion Claimant's "pain is so in excess of what one would expect that it would not be a proper assessment to use." The neurosurgeon did not fail to consider Claimant's pain; he simply did not believe that Claimant's pain related to the 1999 industrial accident was as severe as Claimant contended.

The neurosurgeon also testified that he did not agree with Claimant's attending physician on the issue of Claimant's pain complaints. Claimant argues that the testimony of his attending physician should have been given more or greater weight than the testimony of the physicians who conducted the IME's. "The Commission is not bound to accept the opinion of the treating physician over that of a physician who merely examined the claimant for the pending litigation." *Lorca-Merono v. Yokes Washington Foods, Inc.*, 137 Idaho 446, 451, 50 P.3d 461, 466 (2002). "Credibility of witnesses and evidence is a matter within the province of the Commission." *Stevens-McAtee v. Potlatch Corp.*, 145 Idaho 325, 329, 179 P.3d 288, 292 (2008).

Claimant has failed to show that the Commission erred in failing to consider pain when determining his impairment rating. *Vargas v. Keegan*, 134 Idaho 125, 128, 997 P.2d 586, 589 (2000) (where referee did not refer to claimant's pain or the diagnosis of chronic pain syndrome

7

in the permanent impairment or permanent disability assessments but did acknowledge claimant's pain, pain prescriptions, and chronic pain syndrome diagnosis in the findings of fact which the Commission adopted, it was sufficient to show that the Commission considered pain when assessing impairment); *Pomerinke v. Excel Trucking Transport, Inc.*, 124 Idaho 301, 305, 859 P.2d 337, 341 (1993) (where panel report did not state that pain was a component of the impairment rating, but the report was replete with references to the claimant's pain, it was sufficient to support a finding that pain was a component of the impairment rating).   The Commission's impairment rating is supported by substantial and competent evidence.

**B.  Did the Commission Err in Failing to Apportion Disability as set Forth in *Page v. McCain Foods, Inc.*, 145 Idaho 302, 179 P.3d 265 (2008)?**

The Commission found that Claimant failed to prove that he sustained any disability in excess of impairment from the 1999 industrial accident. Claimant challenges that finding by contending that the Commission failed to engage in the two-step analysis required by this Court in *Page v. McCain Foods, Inc.*, 145 Idaho 302, 179 P.3d 265 (2008).[1]

In *Page*, we dealt with the appropriate procedure for apportioning disability under Idaho Code § 72-406(1)[2] between the industrial accident and any preexisting physical impairment.  We stated that such apportionment requires a two step analysis:  "(1) evaluating the claimant's permanent disability in light of all of his physical impairments, resulting from the industrial accident and any pre-existing conditions, existing at the time of the evaluation; and (2) apportioning the amount of the permanent disability attributable to the industrial accident."  145 Idaho at 309, 179 P.3d at 272.   The claimant in *Page* had a disability in excess of her impairment.  The Commission found that she had a 1% whole person permanent impairment and a 5% whole person permanent disability.   Because in this case Claimant did not have any disability in excess of impairment, that two-step analysis has no application.

---

[1] The two-step analysis in *Page* comes from this Court's opinion in *Horton v. Garrett Freightlines, Inc.*, 115 Idaho 912, 917, 772 P.2d 119, 124 (1989).

[2] The statute provides:

> In cases of permanent disability less than total, if the degree or duration of disability resulting from an industrial injury or occupational disease is increased or prolonged because of a preexisting physical impairment, the employer shall be liable only for the additional disability from the industrial injury or occupational disease.

A permanent disability rating "is an appraisal of the injured employee's present and probable future ability to engage in gainful activity as it is affected by the medical factor of permanent impairment and by pertinent nonmedical factors as provided in section 72-430, Idaho Code." I.C. § 72-425. "[D]isability only results when the claimant's ability to engage in gainful activity is reduced or absent 'because of permanent impairment.' Only after the impairment reduces the claimant's earning capacity do the pertinent nonmedical factors come into play." *Rivas v. K.C. Logging*, 134 Idaho 603, 608, 7 P.3d 212, 217 (2000) (quoting I.C. § 72-423). "The claimant bears the burden of proving disability in excess of his or her impairment rating." *Monroe v. Chuck & Del's, Inc.*, 123 Idaho 627, 631, 851 P.2d 341, 345 (1993).

The purpose of the two-step analysis in *Page* is to facilitate judicial review when the Commission apportions disability under Section 72-406(1). As we stated in *Page*, "When the Commission apportions permanent disability so as to absolve the employer for compensating for preexisting injuries, the Commission must explain its apportionment determination with sufficient rationale to enable this Court to determine whether it is supported by substantial and competent evidence." 145 Idaho at 309, 179 P.3d at 272.

Idaho Code § 72-406(1) only applies "if the degree or duration of disability resulting from an industrial injury or occupational disease is increased or prolonged because of a preexisting physical impairment." *Id*. If it is, then the total disability must be apportioned so that the employer is only liable "for the additional disability from the industrial injury or occupational disease." *Id*.

In this case, the Commission determined that Claimant had a 19% whole person permanent physical impairment caused by the 1999 industrial accident and that he had failed to prove any disability in excess of that impairment. Since he did not have any disability in excess of impairment, no apportionment was necessary in order to determine the employer's liability. The employer is liable for the 19% whole person impairment, and there is no additional disability to apportion. Because Idaho Code § 72-406(1) does not apply where there is no disability in excess of impairment, the Commission was not required to use the two-step analysis set forth in *Page.*

9

**C. Is There Substantial and Competent Evidence Supporting the Commission's Finding that Claimant Is Not Entitled to an Award of Attorney Fees Pursuant to Idaho Code § 72-804?**

Claimant sought an award of attorney fees under Idaho Code § 72-804 on the ground that Surety had initially contested his claim without reasonable ground. The Commission found the following facts regarding the reasons for the initial denial of the claim.

> 44. Surety received the first notice of Claimant's injury on January 20, 2000. The notice of injury listed the date of injury as December 30, 1999, and alleged a shoulder injury. A letter from Employer outlining its concerns with the validity of the claim accompanied the notice of injury. Employer's concerns included inconsistencies regarding the body part that was injured and the date that it occurred. Claimant's version of events was substantially at variance from that of his co-workers. Further, Claimant had not returned to work, and was calling frequently telling Employer that he could not return to work because of his injury, while the medical provider was stating that there was no reason Claimant could not work.
>
> 45. Surety immediately turned the claim over to one of its investigators. The investigator spoke with Claimant, Bill Steinpreis, Employer's shop supervisor, John Davis, Employer's mechanic, and Lea and Jim Rigby, co-owner and superintendent respectively. The investigation report was forwarded to the attorney for Surety in mid-February.
>
> 46. Surety denied the claim on March 7, 2000, based on inconsistencies between and among the statements of Claimant, witnesses, and Employer, questions as to the date of injury, and concern regarding the role played by Claimant's pre-existing conditions. Despite the denial, Surety forwarded the claim to its in-house physician for review of the request for surgery that was pending at the time the claim was denied. Dr. Swartley recommended that the fusion be authorized.
>
> 47. Counsel for Claimant contacted Surety in late March, advising Surety that he was representing Claimant, and asking Surety to reconsider its denial. Surety replied in mid-April that it was standing on its earlier denial, citing to Claimant's failure to provide complete medical information. Surety advised that once it received releases for all of Claimant's prior medical providers, it would re-examine the denial.
>
> 48. Surety reversed its position and accepted the claim in early May.

Based upon those findings, the Commission concluded that Claimant was not entitled to an award of attorney fees under Idaho Code § 72-804. In doing so, it made the following conclusions:

> 68. Surety handled the initial claim in a timely manner, issuing its first determination within about sixty days of the filing of the claim. Given the

10

confusion about the date of the injury, the type of injury, the inconsistencies in witness testimony that sprang from that confusion, and the lapse in time from the date of injury to the filing of the claim, Surety's actions were reasonable. Thereafter, Surety continued to respond to Claimant's counsel in a reasonable manner, seeking additional information and reviewing additional records before reaffirming the denial in mid April.

69. Claimant argues that because Surety reversed its position in early May, and that the claims adjuster had no personal knowledge of the reason or reasons for the change of position, that there was something improper about the original denial. This is purely speculation, as Claimant did not depose the individual or individuals who actually made the decision to accept the claim. Initial decisions denying claims are often reversed for any number of legitimate reasons. Just because we don't know the precise reason in this case is not sufficient to establish that the original denial was unreasonable.

Whether or not grounds exist for awarding a claimant attorney fees under Idaho Code § 72-804 is a factual determination that rests with the Commission. The Commission's decision regarding the awarding of attorney fees will be upheld if it is based upon substantial, competent evidence. *Gooby v. Lake Shore Management Co.*, 136 Idaho 79, 89, 29 P.3d 390, 400 (2001). In this case, the Commission's decision to deny an award of attorney fees is based upon substantial and competent evidence.

**D. Did the Commission Err in Failing to Retain Jurisdiction in this Matter?**

Claimant contends that the Commission erred in failing to retain jurisdiction in this matter. "In a situation where the claimant's impairment is progressive and, therefore, cannot adequately be determined for purposes of establishing a permanent disability rating, it is entirely appropriate for the Industrial Commission to retain jurisdiction until such time as the claimant's condition is nonprogressive." *Reynolds v. Browning Ferris Industries*, 113 Idaho 965, 969, 751 P.2d 113, 117 (1988). Under Idaho Code § 72-425, the Commission may instead "estimate a claimant's probable future disability and reduce it to present value for the purpose of making a final award which takes into account probable future changes in impairment." *Id.* Either option is dependent upon a factual finding that the claimant's impairment is progressive.

If a claimant contends that his or her impairment is progressive and that the Commission should either retain jurisdiction or make an award that takes into account probable future changes in impairment, the claimant needs to raise that issue in the proceedings below. In this case, Claimant did not do so. In his prehearing requests for calendaring, Claimant did not list as an

11

issue that his impairment was progressive and that the Commission should either retain jurisdiction or award impairment that takes into account probable future changes. Likewise, when the referee stated the issues at the beginning of the hearing, Claimant did not raise this issue. In his post-hearing memorandum, Claimant listed the issues to be decided, and the alleged progressive nature of his impairment was not one of them. After the Commission issued its decision, Claimant did not request a rehearing asking the Commission to address the issue. Although he did ask in his post-hearing memorandum that "the record remain open to accommodate any ongoing and future questions concerning impairment, disability and medical care," that was not sufficient to preserve the issue for appeal. *Phinney v. Shoshone Med. Ctr.*, 131 Idaho 529, 532, 960 P.2d 1258, 1261 (1998) ("Because [claimant] did not indicate to the referee prior to the hearing that her benefits calculation was a disputed issue, or move for reconsideration or rehearing under I.C. § 72-718, she is bound by the Commission's findings and cannot now challenge them on appeal"). Because Claimant did not raise below the issue of whether the Commission should have retained jurisdiction, we will not consider it on appeal.

**E. Are Employer and Surety Entitled to an Award of Attorney Fees on Appeal Pursuant to Idaho Appellate Rule 11.1?**

The Employer and Surety seek an award of attorney fees pursuant to Idaho Appellate Rule 11.1. Sanctions will be awarded under that rule if: "(1) the other party's arguments are not well grounded in fact, warranted by existing law, or made in good faith, and (2) the claims were brought for an improper purpose, such as unnecessary delay or increase in the costs of litigation." *Frank v. Bunker Hill Co.*, 142 Idaho 126, 132, 124 P.3d 1002, 1008 (2005). In this case, Claimant raised an issue we had not previously addressed—whether the two-step analysis in *Page* applies where there is no disability in excess of impairment. We will not award attorney fees on appeal against Claimant.

## IV. CONCLUSION

We affirm the order of the Industrial Commission. We award respondents costs on appeal, but not attorney fees.

Justices BURDICK, J. JONES, W. JONES and HORTON **CONCUR**.